STANTON *et al.* v. MILLER *et al.*

*Practice — in equitable actions — adequacy of consideration for deed — escrow — duty of depositary.*

One M. M., being out of health, proposed to some distant relatives to come and live with her, and assume charge of her house. A contract was made, whereby she agreed to convey her house, worth $10,000, to one of the relatives, it being agreed, upon the other part, that she should be supported during her life. In pursuance of the contract a deed was executed and placed in escrow with a written direction by M. M. to deliver it to the grantees upon her death. She lived about a month after the contract was made, and, just before death, directed the deed to be destroyed. The grantees took charge of the house and supported M. M. until they were, by her directions, compelled to leave.

In an action by the grantees to compel the delivery of the deed and of the possession of the house, the court below decided that plaintiffs were not entitled to the relief sought for, but were to compensation, and ordered that they have leave to move for a reference to ascertain the amount, and no final judgment was ordered.

*Held*, that the practice of the plaintiffs in making a case, and moving for a new trial at the general term, is authorized by section 268 of the Code (as amended in 1867).

*Held* also, that the agreement on the part of the grantees to live with, support and take care of the grantor during life, was an adequate consideration for the conveyance of the property in question, and that it was within the jurisdiction of equity to compel the delivery of the deed in escrow.

*Held*, also, that the grantor had not the power to revoke the deed in escrow, An escrow, signed, sealed and deposited upon a valuable consideration, is not revokable by the depositor, except according to the terms of the deposit. The depositary, under such circumstances, is as much an agent of the grantee as of the grantor, and is as much bound to deliver the deed on performance of the condition as he is to withhold it until performance.

MOTION by the plaintiffs for a new trial under section 268 of the Code of Procedure.

The action was brought to compel the defendant George W. Miller to surrender to plaintiffs the possession of certain premises in the city of Rochester, and to compel Oliver M. Benedict, who was also made defendant, to deliver a deed made by Mrs. Andrew Miller, deceased, and which was left in escrow with Mr. Benedict.

The circumstances were as follows: About the 14th of June, 1870, Mrs. Miller, being in declining health, wrote to Eldridge Stanton, a distant relative, the following letter:

"ROCHESTER, *June* 14, 1870.

" MR. ELDRIDGE STANTON :

" *Dear Sir* — I am sick, and wish, particularly, to see you here as soon as possible; and if you cannot come, I wish your father would come. I wish to consult you in relation to my will; it may be, and I intend it shall be, for your advantage to come immediately. I suppose you are aware that my son James is dead, and that I am in, what I fear may be, my last sickness.

" Your affectionate cousin,

" Mrs. ANDREW MILLER."

The letter was sent to Coburg, Canada, where the parents of Eldridge Stanton. resided. He being absent in Detroit, Michigan, at the time, the letter was opened and read by his parents. In consequence of the letter the parents, Oliver Stanton and wife, came immediately to Rochester, to the house of Mrs. Miller. Conversations were had between Mrs. Miller and the Stantons, which resulted in the following agreement :

" Articles of agreement made and entered into, this 23d day of June, A. D. 1870, between Oliver Stanton, of Coburg, Canada, of the first part, and Mrs. Mary Miller, of Rochester, N. Y., of the second part, witnesseth as follows :

" *Whereas,* The said Mary Miller is quite advanced in life, and in very feeble health, and being desirous of laying aside all the cares and anxieties incident to housekeeping, and the said Stanton, with his family, has expressed a willingness to assume all the responsibilities and cares of said Mrs. Mary Miller during her natural life.

" *Now, therefore,* it is mutually agreed between the parties that said Stanton immediately remove his family to the home residence of Mrs. Miller, on Union street, in the city of Rochester, and at once assume all the responsibilities of housekeeping, taking possession and control of said house and furniture, and paying all expenses of the same ; and said Stanton agrees to assume all the care and support of Mrs. Miller, furnishing her provisions, attentions, nursing when sick, which she may require, so that she shall at all times be cared for and made as comfortable as possible during her natural life.

" Mrs. Miller on her part, in consideration of such care, support and attentions, hereby agrees to make sure to said Stanton and his family, the house and lot which she now occupies as a home and

family residence, the lot being one hundred feet front on Union street, and one hundred feet deep. The title thereto being to such member or members of said Stanton's family, as Mrs. Miller may choose, and to be made in such a way as she may be advised, and in such manner as shall make it fully secure; and at the same time under such conditions as to stand as ample security for the full and faithful performance of this contract on the part of said Stanton; and in case he fails to keep and perform his contract in its letter and spirit, his right to said property shall fail, and the same may be disposed of as said Mrs. Miller may choose.

"The title to said property to be given by a deed *in escrow* or by a will, as said Mrs. Miller may choose or be advised, after the said Stanton shall have become a resident, and shall have properly declared their intentions to become citizens of the United States of America.

"MARY MILLER,
"OLIVER STANTON."

As a guarantee of the execution of the agreement on the part of Oliver Stanton, Eldridge Stanton executed this paper:

"For value received I hereby guaranty the full and faithful performance of the foregoing contract, on the part of Oliver Stanton.
"*June* 23, 1870.                                     E. STANTON."

Oliver Stanton removed his family immediately to Rochester, and on the 25th day of June, 1870, he and his four daughters, Miranda P. Stanton, Maria H. Stanton, Harriet M. Stanton, and Mary Anna Stanton, severally declared their intentions, in the mode prescribed by law, to become citizens of the United States.

On the 29th day of June, 1870, Mrs. Miller executed this instrument:

"This indenture made the 29th day of June (1870), in the year of our Lord one thousand eight hundred and seventy, between Mrs. Mary Miller, of the city of Rochester, N. Y., of the first part, and Miranda P. Stanton, Maria H. Stanton, Harriet M. Stanton, and Mary Anna Stanton, of the said city of Rochester of the second part, witnesseth. That the said party of the first part in consideration of the sum of one dollar, to her duly paid, hath sold and by these presents doth grant and convey to the said party of the second part, their heirs and assigns, all that tract or parcel of land situate

VOL. I. — 4

in the city of Rochester, being a part of lot No. 1, in Johnson's and Mastick's survey, and being the house and lot now occupied by the party of the first part, as a homestead, and being one hundred feet front on Union street, and one hundred feet deep of the same width, and which includes the stone house and barn."

"This conveyance made and taken, subject to use of said premises, by Oliver Stanton, for a home for himself and family during his natural life, with the appurtenances and all the estate, title and interest therein of the party of the first part."

"And the said Mary Miller doth hereby covenant and agree to, and with the said party of the second part, their heirs and assigns, that the premises thus conveyed, in the quiet and peaceable possession of the said party of the second part, their heirs and assigns, she will forever warrant and defend against any person whomsoever, lawfully claiming the same or any part thereof."

"In witness whereof the party of the first part hath hereunto set her hand and seal, the day and year first above written.

"MARY MILLER." [L. S.]

The deed was duly acknowledged, and was placed in the hands of Mr. C. M. Benedict for the grantees *in escrow*. There was at the same time delivered to him the following writing :

"I have this day executed a deed of my house and lot, which I now occupy, to Miranda P., Maria H., Harriet M. and Mary Anna Stanton, which is subject to the performance of a contract made by Oliver Stanton, their father, in regard to my support, etc., dated 23d instant. The said deed is delivered to O. M. Benedict, of Rochester, *in escrow*, for the use of the grantees at my decease, and not deliverable to them before that time, June 29, 1870.

"MARY MILLER."

The Stanton family remained with Mrs. Miller until about the 21st day of July, 1870, when they were directed by Mrs. Miller to leave and did so. They claimed to be ready and willing to remain with Mrs. Miller and fulfill their part of the contract.

About the 1st of August Mrs. Miller died. On the 5th of August, and after her death, plaintiffs demanded the delivery of the deed, and on the 6th possession of the house. Both being refused, this action was brought. The case was tried before Hon. J. C. Smith, Justice, who found as follows:

" The court having tried this cause finds as facts:

" That the allegations in the complaint respecting the letter of the 14th June, 1870, and the execution of the agreement dated 23d of June, 1870, between Mary Miller and Oliver Stanton, set forth in the complaint are true. That said Stanton performed said agreement on his part, until the 20th of July, 1870, when Mrs. Miller directed him to leave her house, and he did so, with his family, under protest.

" That on or about the 29th of June, 1870, Mrs. Miller signed and acknowledged a deed of that date, a copy of which is in the complaint, and left the same with Oliver M. Benedict as an *escrow*, and at the same time left with him a memorandum in writing, a copy of which also is in the complaint. That, at the same time, she also executed and left with him a paper purporting to be her last will and testament, in which were the same provisions respecting the disposition of the house and lot described in the deed as are contained in the deed. That when she directed said Stanton to leave her house, she offered to pay him damages, which he refused, and she caused said will to be destroyed and revoked, and she directed said Benedict to destroy said deed and not to deliver it, and she executed another will devising said house and lot to her son and two of his children.

" That at the time of making said agreement, and the deed and will in which the Stantons are named, the said Mary Miller was sick and feeble, and it was not supposed by herself or the Stantons that she could recover, or that she could survive many months; she was living with no one but servants in her house, and was troubled and anxious on account of her lonely condition, and her mind and memory were slightly impaired, though not to such an extent as to render her incapable of making a valid contract.

" That the value of the house and lot mentioned in the complaint were $10,000. That at the time of making the agreement it was supposed and understood by all parties that the undertaking of said Oliver Stanton was a very inadequate consideration for said house and lot; and it was so in fact.

" That at the time of entering into her contract, Mrs. Miller was advised by her counsel who drew the papers, that she could put an end to her arrangement provided for by contract whenever she chose to do so, but that in such case she would be liable for damages, and

she relied on such advice in entering into said contract, but the fact that such advice was given was not known to the Stantons.

"That Mrs. Miller died on the 28th of July, 1870, and after her death the plaintiffs made the demands alleged in the complaint, and they were refused.

"The court also decides as matter of law that the plaintiffs are not equitably entitled to a decree for the special performance of the contract to convey the house and lot, the delivery of the deed left with O. M. Benedict, or for a delivery of the possession of the house and lot therein described, and the prayer for the same should be denied. But that the plaintiffs, some or one of them, are entitled to receive compensation for their damages in the premises, and to have the amount of such damages ascertained and adjudged in this action, and for that purpose to have liberty to move that the legal representatives of Mrs. Miller be made a party to this action, if they shall be advised the same is necessary, and also to move for a reference or an issue to ascertain the amount of such damages, and in the mean time the further hearing of this action should be ordered to stand over till the coming in of the report or verdict, and all further questions including the question of costs should be reserved.

"JAMES C. SMITH."

*G. F. Danforth*, for plaintiffs.

*W. F. Cogswell*, for defendant, G. W. Miller.

TALCOTT, J. It is claimed by the defendants that the plaintiffs' attorney has misconceived the practice, and that this is not a case where the plaintiffs are entitled to move for a new trial under section 268 of the Code. The action is in equity, and was commenced to compel the delivery to the plaintiffs of a deed to some of them, which had been signed and sealed and acknowledged by Mrs. Mary Miller in her life-time, and deposited with the defendant Benedict as an *escrow*, subject to the performance of a contract made between the said Mary Miller, and the plaintiff Oliver Stanton, and, after the death of said Mary Miller to be delivered to the grantees therein named, who are the other plaintiffs, and the daughters of said Oliver Stanton.

The cause was tried before the Hon. James C. Smith, one of the justices of this court, who made and filed his decision containing his finding of facts and conclusions of law. But, instead of render-

ing or ordering any final judgment in the case, the justice having arrived at the conclusion that the plaintiffs were not entitled to the relief sought by them, but were entitled to receive compensation in damages for the breach of the contract between Mrs. Miller and Oliver Stanton, and to have such damages ascertained and adjudged in this action, ordered, that the plaintiffs have leave to move to have the legal representatives of Mrs. Miller made parties, if they should be advised that it was necessary; and, also, that the plaintiffs have leave to move for a reference, or an issue to ascertain the amount of such damages; and in the mean time the further hearing of the cause was ordered to stand over till the coming in of the report or verdict, and all other questions including that of costs were reserved.

The propriety of this decision, under the circumstances, does not seem to be material to the question of practice. It seems to us to be clearly a case within both the words and spirit of section 268 of the Code. It is a decision on the trial of a question of fact by the court. It does not authorize a final judgment, but directs further proceedings before a referee or otherwise. This is precisely the decision described in the present section 268. The amendment of 1867 was adopted to remedy the inconvenience which arose from the fact that where the whole merits were disposed of, by what was formerly known as an interlocutory decree made after the trial of an equity case, there was no mode of reviewing the proceedings on the trial, except after the delay and expense of the further contemplated proceedings had been incurred, and the whole of which, if it should turn out that any error had been committed on the trial or in the interlocutory decision, would be useless. As evidence was formerly taken in equity cases, the merits of an interlocutory decree might be reviewed upon the evidence. But, under the Code, the trial of an equity case being conducted in the same manner as an action at law, there remained, until the amendment of 1867, no known method of reviewing the questions arising on the trial of such an action, otherwise than by a bill of exceptions or a case, which was to be made within a specified time after notice of the judgment. This case affords an apt illustration of the inconvenience of the former practice, and the propriety of the amendment of 1867. The plaintiffs claim that the justice at the circuit erred in refusing them the equitable relief which they claimed, and are unwilling to accept the issue *quantum damnificatus* which the court

Stanton v. Miller.

has awarded. To proceed with the trial of such an issue would involve much expense and delay, the whole of which would have been uselessly incurred, if it should turn out that the justice at the circuit had erred in the admission or exclusion of evidence, or in his findings of fact or conclusions of law. It seems to us, therefore, that this is precisely one of those cases which were intended to be embraced within the section 268 as amended in 1867. And that the practice of the plaintiffs in making a case and moving for a new trial at the general term is authorized by that section as it stands now.

The contract between the plaintiff Oliver Stanton and Mrs. Miller the justice at special term finds to be a valid contract, and to have been fully performed on the part of Stanton and his family, and to be free from all objection as to fraudulent practices, imposition or undue influence on the part of Stanton or his family, or want of capacity on the part of Mrs. Miller. Indeed the evidence shows that the contract was prepared by Mr. Benedict, under and according to the explicit directions of Mrs. Miller, who of her own motion consulted with and directed Mr. Benedict, as her counsel in the premises. The contract was made in June, 1870, and nothing can be more full, explicit and fair than this contract appears to be on the face of it. After a recital of the moving causes of the contract, the instrument proceeds :

"Now, therefore, it is mutually agreed between the parties that said Stanton immediately remove with his family to the home residence of Mrs. Miller, on Union street in the city of Rochester, and at once assume all the responsibilities of housekeeping, taking possession and control of said house and furniture, and paying all expenses of the same. And said Stanton agrees to assume all the care and support of Mrs. Miller, furnishing her attentions, nursing when sick, which she may require, so that she shall, at all times, be cared for and made as comfortable as possible during her natural life.

"Mrs. Miller on her part, in consideration of such care, support and attentions, hereby agrees to make sure to said Stanton and his family, the house and lot which she now occupies as a home and family residence, the lot being one hundred feet front on Union street, and one hundred feet deep. The title thereto being given to such member or members of said Stanton's family as Mrs. Miller may choose, and to be made in such a way as she may be advised,

and in such manner as shall make it fully secure, at the same time under such conditions as to stand as ample security for the full and faithful performance of this contract on the part of said Stanton. And in case he fails to keep and perform his contract in its letter and spirit, his right to said property shall fail, and the same may be disposed of as said Mrs. Miller shall choose. The title to said property to be given by a deed in escrow or by a will, as said Mrs. Miller may choose or be advised after the said Stanton shall have become a resident, and they shall have properly declared their intentions to become citizens of the United States of America."

Surely there can be no doubt that the intention of the parties to this contract was to fully secure to Stanton and his family the house and lot in question, after the death of Mrs. Miller, provided the agreement on the part of Stanton, in behalf of himself and his family, should be fully performed on their part, in letter and spirit. And we are unable to see why, it being made between parties able to contract and being free from all legal and moral objections, it is not a binding contract, or why, having been fully performed on the part of Stanton, and Mrs. Miller having died, it would not be entirely obligatory on her representatives with all the incidents, including measure of damages if sued at law, which appertain to any other valid contract. After Stanton and his family had broken up their residence, and abandoned their respective employments in Coburg and removed to Rochester, abjured their allegiance and taken the necessary steps to become citizens of the United States, in pursuance of the contract, Mrs. Miller also, in pursuance of the contract and under the advice of her counsel, Mr. Benedict, signed and sealed and acknowledged a deed, conveying the premises to the four daughters of Stanton, which, on the face of it, was declared to be "made and taken subject to the use of said premises by Oliver Stanton for a home for himself and family during his natural life." This deed was delivered to Mr. Benedict as an escrow, upon a written condition signed by Mrs. Miller, as follows, viz.:

"I have this day executed a deed of my house and lot, which I now occupy, to Miranda P., Maria H., Harriet M., and Mary Anna Stanton, which is subject to the performance of a contract made by Oliver Stanton, their father, in regard to my support, dated on the 23d instant. The said deed is delivered to O. M. Benedict, of

Rochester, *in escrow* for the use of the grantees at my decease, and not deliverable to them before that time.

"*June* 29, 1870.             MARY MILLER,"

Mrs. Miller died the last of the following July, but before her death she had directed Benedict to destroy the deed. This direction seems to have been given at the instigation of her son, the defendant George W. Miller, who it appears came from his residence in Albany, just before his mother's death, took the control of her house and interfered with some harshness and violence to remove the family of the Stantons from the house, to induce Mrs. Miller to revoke her intentions in regard to the disposition of the house, and to destroy the deed in *escrow*. The justice who tried the cause has treated the action as a suit for the specific performance of the contract, the provisions of which are recited above, and has denied the title of the plaintiffs to relief mainly on the ground of a supposed inadequacy of consideration. The specific relief, however, which the plaintiffs demand, is the delivery to them of the deed deposited in *escrow*.

Treating the action as one for specific performance, we cannot see that there was any such inadequacy of consideration as to afford evidence of any unfairness or overreaching on the part of Stanton. The proposition, which came from Mrs. Miller, and was unsolicited by Stanton, involved the necessity of breaking up his house and all his social ties at Coburg, the place of his residence, and the abandonment by himself and his four daughters, all adults, of the employments in which they were then engaged. Each of the daughters was a professional teacher, was employed as such and doubtless had, what was to her important, a circle of patrons and friends, the growth of a long acquaintance, and not easily to be acquired by a stranger in a strange country. The arrangement not only involved the abandonment of all these advantages, but the devotion of their time for an indefinite period to the care and nursing of an invalid, one who had been such for many years, and her support during her life, while all they were to receive in return, until the death of Mrs. Miller, was the occupancy of the house. The house and premises are estimated to be worth $10,000. And it is impossible to say that here was such gross inadequacy of consideration as calls upon a court of equity to refuse the equitable relief usually granted upon contracts respecting the conveyance of real estate, and

where the parties cannot well be put in *statu quo*. We see nothing extraordinary or unusual in such a contract on the part of Mrs. Miller. This property was her own to dispose of as she saw fit. It constituted but a portion of her estate. Her remaining descendants were, at all events as she seems from her expressions to have supposed, in prosperous circumstances. She seems to have understood that the whole estate remaining of her husband, and to which the family were entitled, that is, as we understand, herself and the defendant George W. Miller, amounted to some $200,000. And, to use her expression, her other relations had their homes and were well enough off. She, herself, was a helpless invalid, left alone to the care and charge of domestics, doubtless much isolated from society, and is testified saying that she had to lock herself in her room and was afraid of her life. She well understood the state of her health and the nature of the arrangement. The plaintiffs were her relatives who had been, by some misfortune, reduced in their pecuniary circumstances, and as it would seem from their avocations persons of education and cultivation; under such circumstances who can say that it was an improvident arrangement on the part of Mrs. Miller, carefully guarded as the agreement was, to attempt to relieve herself of all the trouble and expense of maintaining the domestic establishment, and to secure not only sociable companionship, but support, kind care, attention and nursing during the remainder of her uncertain life, and by these means, as far as possible, smooth the pathway of her declining days by disposition of what, to her, after the contemplated event, would be worthless. It is not a question as to whether the defendant George W. Miller can be deemed to have received an adequate consideration for the property. It was not his. It belonged to Mrs. Miller to dispose of as she saw fit; indeed it is extremely difficult to determine that any present consideration of value is an inadequate compensation to the owner of property for an agreement to part with it at his death. The remaining interest is worthless to him. He agrees to part with it only when it is no longer of any value, so far as he is concerned.

The justice at the circuit seems to have looked at this case in the light of the after events and from the stand-point of the heir at law, and not that of the owner. Mrs. Miller having, in fact, died within little more than a month after the making of the arrangement, it seems that the consideration was inadequate. But the true way to look at the transaction is to take the place of the parties as they

*Stanton v. Miller.*

stood at the time, and not according to the fact, as it afterward resulted, but as it appeared or may be presumed to have appeared to the parties at the time the contract was made. Mrs. Miller was fifty-six years old, suffering from a disease by which she had been afflicted for years, and under which, from all that an unskilled person might know, she might survive for many years longer. The fact that Mrs. Miller was influenced in entering into the arrangement to some, perhaps to a great extent, by motives of benevolence toward Stanton and his family, does not weaken the position of the plaintiffs. The heir at law has no legal right to complain, even had this been the motive. The contract furnished a valuable consideration, and where this is the case, what would otherwise be mere benevolence, becomes an obligatory contract. The case of *Rhodes* v. *Rhodes*, 3 Sandf. Ch. 279, and *Parsell* v. *Stryker*, 41 N. Y. 480, show that the specific performance of contracts of this character will be compelled in equity. But we do not consider this to be an action for the specific *performance* of the contract. The plaintiffs claim to be entitled to the delivery of the deed, which was deposited in *escrow*.

This is the specific relief demanded in the complaint. To compel the delivery of deeds and other instruments, in favor of persons who are legally entitled to them, is an old head of equity jurisdiction, is a most important branch of that jurisdiction, and is exerted in all suitable cases in favor of persons entitled to the possession of deeds or other instruments. Story's Eq. Juris., § 703; Willard's Eq. Juris. 307. And a case where a deed has been delivered in *escrow*, upon a condition which has been fulfilled, would seem to be one which especially justifies and calls for the exercise of this jurisdiction, since the withholding of the deed interferes with and probably prevents the vesting of the legal title. It appears that, contemporaneously with the deed, Mrs. Miller also executed a will devising the property in question, as the same purported to be disposed of by the deed, and making provisions in regard to the residue of her property. This will was also deposited with Mr. Benedict, and was subsequently, and just before her death, destroyed by Mr. Benedict, by Mrs. Miller's direction, and at the instigation of the defendant, George W. Miller.

Both the will and the deed were communicated to the plaintiffs, and were acquiesced in by both parties as instruments by means of which the contract was to be performed on the part of Mrs. Miller.

The will is not alleged in the complaint, nor is any relief sought, founded upon it. If it were necessary to the relief of the plaintiffs, it is quite probable that the provisions of the will in their favor might be established notwithstanding its destruction. In the case of *Loffus* v. *Maw*, 8 Jur. N. S. 607, where a testator, in advanced years and ill health, induced the plaintiff A to reside with and continue valuable services to him on the faith of his representations, that by so doing she would become entitled to the benefit of property for life at his death; and by a codicil to his will, which was read over and explained to her, trusts were created in her favor, the court held that the testator could not revoke the trusts. The vice-chancellor in that case says (page 609):

"In cases of this kind, a representation that the property is to be given by a revocable instrument, is binding. It is the law of the court which makes it binding, although it be of the essence of the representation that the instrument is to be of a revocable nature. * * * The testator's representation in this case, and any other case within the application of the doctrine, binds the property which he devised to the plaintiff, as completely, according to the law of this court, as if he had bound himself in consideration of money not to revoke the gift, and had made the person named in the will a purchaser of the property devised."

Mrs. Miller has not destroyed the deed in escrow, and has not attempted by any formal instrument to revoke it; she had not the power to do so; an escrow signed, sealed and deposited upon a valuable consideration is not revocable by the depositor, except according to the terms of the agreement and deposit. The depositary of an escrow, made under such circumstances, is as much the agent of the grantee as of the grantor, and he is as much bound to deliver the deed on performance of the condition as he is to withhold it until performance. 3 Washb. on Real Prop., ch. 4, § 2, pp. 371, 372, 373; *Shirley* v. *Ayres*, 14 Ohio, 307; *Ruggles* v. *Lawson*, 13 Johns. 285; *Belden* v. *Carter*, 4 Day, 66; *Hatch* v. *Hatch*, 9 Mass. 307; *Jackson* v. *Rowland*, 6 Wend. 666. Whether the deed can take effect without actual delivery may be doubtful; but, when delivered, the delivery relates back to the time of deposit. Same cases, and 4 Kent's Com. 454.

In this case, it appears that the contingency upon which the deed was to be delivered, viz., the death of Mrs. Miller, has happened, and the justice finds that the Stantons have fully performed the

contract on their part. This being so, we are of the opinion that the arrangement created an equitable interest in the property in question, which had ripened into an absolute equitable (if not legal) title on the death of Mrs. Miller, and that the plaintiffs are entitled to a delivery and the custody of the deed, and that the same be recorded. This leads to a reversal of the decision at the special term. If this were an appeal, we should order such a decree as on the case we think ought to have been made at the special term; but, under the section 268, under which this motion is made, we can do no more than order a new trial.

New trial ordered, costs to abide the event.