## William Hosley v. George Holmes and others.

*Foreclosure: Defense: Fraud: Evidence.* In this case, which was a bill to foreclose as a mortgage, a deed and bond claimed to have been given by way of security for an indebtedness, and to which the defense was set up that the deed was obtained by fraud, and that the bond produced was a different one from that which the parties actually executed, it was held that the evidence did not sustain this defense.

*Deed: Delivery: Escrow: Presumption.* A delivery of a deed to a third person for the benefit of the grantee, in the absence of any thing conveying a different intent, is as much a delivery as if made to the grantee himself; and when papers show upon their face that they are intended to take effect and operate from their execution, it will not be presumed that their delivery to a third person to be afterwards delivered to the parties, was merely as an escrow, and that they were not to take effect until such subsequent delivery.

*Agreement construed: Delivery.* An agreement that a deed given as security, and a bond intended to show the purpose of the deed and the nature of the transaction, should be left with a third person until a time specified, and then to be delivered to the parties, unless within the time they were called for by both parties together, can not be said to be unconscionable if construed according to its purpose and intent; and such an agreement shows at least that no control of the papers or right to recall them was retained by the grantors.

A provision in such a bond that in case of payment of the indebtedness secured by the deed, the grantee named in the deed was to deed the property back, is inconsistent with an intent that the deed was to have no effect until after such subsequent delivery.

*Bona fide purchaser: Notice.* A purchaser who has notice that another has claims upon the property, and that certain unrecorded papers relating thereto have been executed, but who, without seeing those papers, or inquiring into the nature of such claims, sees fit to buy upon the assumption that they relate only to a mortgage of record in favor of the same person, is not entitled to be protected as a *bona fide* purchaser, against such claims.

*Heard April 10.    Decided July 15.*

Appeal in Chancery from Shiawassee circuit.

*H. H. Harmon,* for complainant.

*Gould & Lyon,* for defendants.

CHRISTIANCY, CH. J.

This was a bill to foreclose a mortgage. Substantially the case stated by the bill is this: Complainant having a mortgage (with a note) executed to him by the defendant

Holmes, upon certain land with a grist-mill thereon, in the village of Laingsburg (Shiawassee county), dated January 9, 1868, for two thousand eighty-seven dollars and twenty-one cents, payable one year from its date, with interest at the rate of ten per cent., which was duly recorded, and being also the owner and holder of a joint and several promissory note executed to him by the defendant George Holmes and one Holland C. Hosley, also dated on the 9th of January, 1868, for six hundred sixty-two dollars and seventy-nine cents, payable one year after date with interest at ten per cent., no part of which was secured by the said mortgage; and the said mortgage and the said last mentioned note being over due and unpaid, and the said Holmes being unable to pay, but wishing further time, did, together with his wife (defendant Eliza), on the 12th day of February, 1869, execute and deliver to complainant a deed purporting to convey to him the undivided half of certain lots, known as the mill lot, in the village of Laingsburg, together with engine, boiler, weights and scales, and all appurtenances, which deed was absolute on its face and in the ordinary form of a full covenant warranty deed, but which the bill alleges was executed for the purpose of securing the payment, by the 9th of January, 1870, not only of the money secured by the mortgage above mentioned, with the interest, but also the one-half of the said note made by the said George Holmes and Holland C. Hosley, with the interest, and also to secure the expense of keeping the buildings on the premises described in the deed and mortgage, insured in the amount of two thousand five hundred dollars, for the benefit of the complainant, and for the payment of the taxes of 1869; that for the purpose of explicitly declaring and showing that such were the objects of said deed, the complainant and one Thomas Goldsmith, at the time of the execution and delivery of the deed (February 12th, 1869), executed and delivered to said George Holmes a bond or obligation to him, which bond is in the penal sum of two thousand five hundred dollars, and, after referring to said deed,

contains the following condition: "That if the said Holmes pays said Hosley the amount of a certain mortgage which said Hosley holds against the mill, of about two thousand one hundred dollars and interest on the same; also one-half of a certain note of six hundred dollars or thereabouts, which note was signed by the said George Holmes and Holland C. Hosley; said moneys, both note and mortgage, to be paid by the 9th day of January, 1870, by said Holmes; and further, said Holmes is to remain in the mill, do one-half of the work, and pay his equal one-half of all expenses, have the half of the mill insured to the amount of two thousand five hundred dollars, which policy is to be assigned for the benefit of said Hosley in case of fire; and to have an equal one-half of all the profits of said mill to the said 9th day of January, 1870; and the said Hosley agrees, if the money and interest is paid at any time between now and the said 9th day of January, 1870, to deed the same property back to said George Holmes or any other person whom Mr. Holmes designates; but if the money mentioned in said mortgage and note be not paid by the said 9th day of January, 1870, then said deed to become operative, and this bond be null and void;"

That on the 13th day of February, 1869, the said deed and the said bond were, by mutual arrangement and consent, left with one Sidney S. Manzer of said county of Shiawassee to be kept by him until the 9th day of January, 1870, then to be delivered to complainant, unless called for by said Holmes and complainant, both being present; that in accordance with said arrangement they were kept by said Manzer without being called for by said Holmes and complainant, until January 9th, 1870, when they were delivered to complainant, and both said deed and bond were duly recorded January 29, 1870, and are now in the possession of complainant, ready to be produced and proved, etc., and to which reference is made; that after said deed and bond were so executed and delivered and placed in Manzer's hands, viz: about the 22d of July, 1869, said

George Holmes and wife sold and conveyed the land and premises described in said deed, to defendant George A. White, by deed of that date, subject to the lien thereon of complainant's said mortgage of two thousand eighty-seven dollars and twenty-one cents and interest thereon, and also a levy thereon of four hundred sixty-eight dollars and thirty-three cents, which liens said White, in and by said deed, agreed to pay; which ·deed was recorded, etc., and to which reference is made; charges that White before he purchased or took said deed, had full knowledge of the existence of said deed made to complainant, and of said bond, and of complainant's lien to the amount of his said mortgage, and the half of the said Holmes and Hosley note, insurance, taxes, and expenses; that there is now due upon the mortgage and securities last mentioned, the sum of three hundred and thirty-one dollars and thirty-nine cents, and interest thereon from January 9, 1868, at ten per cent., and seventy dollars for taxes, insurance, and expenses paid by complainant on the premises.

It may as well be stated here that previous to the filing of the bill, White had paid complainant ·the full amount of his original mortgage of two thousand eighty-seven dollars and twenty-one cents and interest, and complainant had released that mortgage of record; so that the only questions in the case relate to the claim for half the Holmes and Hosley note, insurance, taxes and expenses.

The bill calls for an answer without oath, for foreclosure and sale, in the common form of foreclosure bills. All the defendants, by answer, admit the original mortgage of two thousand eighty-seven dollars and twenty-one cents to complainant, but allege its payment in full by White (about which there is no dispute). As to the note of Holmes and Hosley for six hundred and sixty-two dollars and seventy-two cents, White alleges his ignorance, and leaves complainant to the proof, and defendants, Holmes and wife, deny that complainant was the owner or holder of any such note as he alleges in his bill. All the defendants

admit the making, execution, acknowledgment and record-
ing of the deed by Holmes and wife to complainant, of
February 12th, 1869, but deny that it was executed for the
purpose of securing any indebtedness from Holmes to com-
plainant, or to secure him for any expense, taxes or insur-
ance; and deny that the deed was delivered to complain-
ant, or to any person for him by Holmes and wife, or by
their consent or direction.    All the defendants deny the
execution by the complainant and Goldsmith, of the bond
stated in the bill, or that Holmes ever knew of the execu-
tion of the same, that such deed or bond were left with
Manzer by the arrangement stated in the bill, or that they
were kept under such arrangement by him, or delivered to
complainant, as claimed by the bill; admit that the deed
of Holmes and wife to White was subject to the original
mortgage and to the attachment alleged in the bill; but
deny all notice or knowledge by White of the said six
hundred and sixty-two dollar note of Holmes and Hosley,
or that complainant had any claim or lien on the property
for any part of it, or for the insurance, taxes, or expenses,
or for any thing except the original mortgage and interest.
White insists that he purchased in good faith, and sets up
the defense of a *bona fide* purchase for valuable considera-
tion without notice.    He, however, admits that before he
paid the original mortgage, or the judgment in the attach-
ment suit, he heard rumors that there were certain papers
between Holmes and complainant, relating to the property
in some way, in the possession of Manzer; and says he
applied personally and by his attorney for information and
inspection thereof, which Manzer refused, and refused to
give copies; that the papers were sealed up in an envelope,
and he refused any information in respect to them; and
insists that the agreement stated in the said bill as to
delivery of deed is unconscionable and void.    All the
defendants deny that the sum stated in the bill as due on
said mortgage and deed is due.    Defendants Holmes and
wife say, that long before the execution of their deed to

complainant, Holland C. Hosley had been in partnership with Holmes in the use of said premises and mill; that they could not agree and stopped doing business; that if they ever gave the six hundred and sixty-two dollar note, it was a partnership note, and should be paid out of the partnership property; that said Holland C. Hosley is largely indebted to the firm, and to said Holmes, and was at the time of the execution of said deed, and has in his hands a large amount of the property and assets of the firm; that about January 25th, 1869, complainant purchased of Holland C. one-half of said mill property, and placed his son in charge after taking possession of it; that the son took nearly all the earnings of the mill up to June 25th, 1869, and has never accounted to Holmes for, or paid over any portion thereof; that the earnings were large enough to have paid said six hundred and sixty-two dollar note and all the other indebtedness of Holmes about the business; that upon an accounting it would be found, not only that said note was paid, but that complainant would be largely indebted to Holmes; that the books of the partnership are all in the possession of the complainant, who fraudulently took and kept the same, refusing Holmes access thereto, so that he cannot make a statement in detail; claims that the amount so due should be set off against any amount which may be found due complainant.

They then set up that said deed was procured of them by fraud by complainant and Goldsmith; that they proposed to these defendants that they should execute a deed to Holmes, which might be deposited with some third person as an escrow, and complainant agreed to extend the time of payment upon the mortgage another year; and, if these defendants then could not, or did not desire to pay said mortgage, complainant agreed to pay them one thousand two hundred dollars and take the deed; and complainant pretended to have a contract to that effect written, which was read to defendants, which should be deposited with Manzer, together with the deed; that the bond referred to

in the bill is not that contract, and contains no such agreement; and they aver that if said bond was left with said deed, it was so left without their knowledge or assent, and was afterwards prepared and left for the purpose of defrauding and cheating these defendants; that said Holmes afterwards, fearing some trick, called upon Manzer to inspect the papers, but the same were sealed up, and Manzer refused to allow him to examine them, or to inform him of the contents, and Holmes then forbade him to deliver the papers to complainant.

The case was heard on pleading and proofs, and the bill dismissed.

It will be seen that two main questions arising in the case, and upon which the whole case hangs as to Holmes and wife, are: *first*, whether the deed of Holmes and wife to complainant, of February 12th, 1869, and the bond of complainant and Goldsmith, showing the purposes of that deed, constituted the real arrangement made between the parties, or whether the deed was obtained by fraud, and the execution of a different agreement, in place of which the bond was fraudulently substituted, as claimed by the defense; and, *second*, if there was no fraud, and the arrangement made by the deed and bond was fair, and understood by the parties, then, whether there was such a delivery of the deed and bond as to give effect to them between the parties.

As to the first point, the testimony on the opposite sides is directly in conflict. That of complainant and of Goldsmith, who drew the papers, is full, specific, direct and positive, that the deed and bond were read over and understood by the defendants Holmes and wife; and that the bond is the same agreement which was made, read and signed, and the only one drawn on the occasion; and their testimony fully sustains all the allegations in the bill in respect to the execution of the deed and bond, and the terms of the written agreement upon which they were left with Manzer; that of the justice (Runciman) who took

the acknowledgment of the deed, and witnessed both that and the bond, is also clear and satisfactory as to the execution of the deed and bond, and as to the identity of the bond, as the contract then drawn and signed. On the part of the defendants, the testimony, though sufficiently positive in most respects, is by no means clear and satisfactory. Defendants Holmes and wife, by their answer, had fully admitted the execution of the deed, though denying that it was executed for the purpose alleged by complainant. But Holmes, in his testimony, denies that any deed or conveyance was executed by him and his wife, and says it was only a contract for a deed which was executed; and yet it is clear from the testimony that he had himself gone and got the blank deed which was used for the purpose, and well understood that it was a deed; and, finally, when pressed on the point on cross-examination, admits that this deed was the paper that was executed. Again, both Holmes and wife testify, in substance, that the agreement before the papers were executed was, that if Holmes did not or could not pay the mortgage by the 9th of January, 1870, then that complainant was to have this deed (his wife admits it was a deed which was executed), and that complainant, in that event, was to pay Holmes two thousand five hundred dollars; or, in other words, that complainant was to have the land in payment for his mortgage and pay Holmes two thousand five hundred dollars besides; and they say that this agreement was embodied in the bond or instrument then executed by complainant and Goldsmith to Holmes; that she read it, and that she also read it aloud to her husband; and that the bond produced, and which the evidence shows was left with Manzer, is not the same bond then executed and read by her. And they produce their son, who testifies that he thinks the bond which was executed contained the agreement stated; he admits he did not read it; admits he witnessed some paper, don't know what. And it appears beyond all question that he did put his name to this very bond as a subscribing witness. But

there is one feature of the case, as shown by themselves, which shows that their testimony, in reference to the bond executed at that time containing any such agreement as they state, for the payment of two thousand five hundred dollars by complainant if the mortgage was not paid, is unworthy of full credit, not only upon that, but upon every other point in the case. They both agree that the papers then executed were to be left, and that they were left in the hands of Manzer. They do not pretend that they believed the complainant and Goldsmith were unable to meet the payment of the two thousand five hundred dollars agreed upon if the mortgage should not be paid. (In their answer they stated the sum at one thousand two hundred dollars.) And yet they testify that they sold the property to White for four thousand dollars only, July 22d, 1869, complainant's original mortgage, which White was to pay, being so much of the purchase money. This mortgage alone, with interest at ten per cent. to July 22d, 1869, was two thousand four hundred and seven dollars and twenty-one cents, which, taken from four thousand dollars, leaves only one thousand five hundred and ninety-two dollars and seventy-nine cents, which defendants Holmes and wife received for the property beyond the mortgage. This sum, taken from the two thousand five hundred dollars which complainant would have been bound to pay them beyond the mortgage, January 9th, 1870, leaves nine hundred and seven dollars and twenty-one cents. This sum, it seems, they chose to lose for the sake of selling to White. This is extremely improbable, if they then understood and believed they had the contract of complainant and Goldsmith in Manzer's hands for the payment (in less than six months) of two thousand five hundred dollars beyond the mortgage.

We are satisfied that the bond produced is the bond agreed upon by the parties, and executed by the complainant and Goldsmith; and that there was no fraud in obtaining the deed. And though Holmes says he did not sign the

endorsement on the back of the envelope in which they were left with Manzer, the proof is clear and satisfactory that he did; and he admits that he agreed they should be left with a third person, and he proposed Manzer; and that they were left with Manzer; but says he did not agree that the papers should be given up to complainant without the payment of the two thousand five hundred dollars by him. We see no reason to doubt that he agreed to and signed that memorandum, when the papers were left.

As to the question of delivery of the deed and bond to the respective parties before they were left with Manzer, the complainant testifies they were so delivered; Goldsmith only says, after they were executed they were placed in an envelope, and by direction of Holmes placed in Manzer's hands; while defendants Holmes and wife deny that they were delivered between the parties before, though they admit they were, with their concurrence, placed in Manzer's hands. And it is claimed on their part that they were placed in his hands merely as escrows, and that the deed could not take effect between the parties until a subsequent delivery, and therefore did not affect the land at the time of White's purchase.

As a delivery to a third person for the benefit of the grantee, or the party in whose favor it is made, is just as much a delivery as if made to the grantee or party himself, unless some other intent is evinced, it often becomes a difficult question whether the delivery is merely as an escrow, to take effect upon a subsequent delivery after the performance of some condition; or whether it is to be effective between the parties from the time of the first delivery. We have already found that the papers were not delivered to Manzer upon any such condition as that set up by defendants. And it may be that, upon complainant's theory, no very good reason appears why they should be left in the hands of a third person at all, instead of being delivered and recorded at the time.

But when papers show upon their face that they are

intended to take effect and operate from their execution, it would be very difficult to maintain that the delivery to a third person was merely as an escrow, and therefore not to take effect till a subsequent delivery, although such third person was not to deliver them until a future day. In the present case, the bond, which was intended to show the purpose of the deed and the nature of the transaction, shows clearly that not only the deed but the bond were both to have effect at the time of their execution; though the agreement was that the papers should be left with Manzer till January 9th, 1870, and then to be delivered to complainant, unless within the time called for by Holmes and Hosley, both being present. This agreement is in no way unconscionable, with a conscionable construction, according to its purpose and intent; and it shows, at least, that no control of the papers, or right to recall them, was retained by the grantors. The bond provides what the respective parties are to do, and the interest they are to have in carrying on the mill in the meantime. It also clearly shows that the purpose of the deed was to be as security, from the time of its execution, for the half of the Holmes and Hosley note, and other matters mentioned, as well as the debt covered by the original mortgage; and all that was to defeat the operation of the deed at any future time was the payment of these several matters; in case of which payment complainant was to deed the property back, a provision not likely to have been inserted, if the deed in the meantime was to have no effect.

It is quite probable that the complainant and Goldsmith, if not also Holmes and wife, understood at the time that the effect of the deed and bond was to place the absolute title of the property in complainant, unless the matters of indebtedness stated in the bond should be paid before January 9, 1870.

But the deed being given by a debtor to his creditor to secure a debt in fact, the law (or rather the principle settled by courts of equity, which is a part of the law of the

land) gives to the transaction the effect only of a mortgage;. whatever the intent of the parties might have been; and so the complainant has properly treated it.    He had the deed and bond both recorded after he received them of Manzer,. and now asks to have the same foreclosed as a mortgage for all the matters of indebtedness secured by it, except the original mortgage, which has been paid.  To this decree he is clearly entitled against all of the defendants, unless White is a *bona fide* purchaser for a valuable consideration with-- out notice. · Upon the point of actual notice the evidence is directly in conflict: while that on the part of the com- plainant is direct and positive to actual notice to White,. prior to his purchase.    White as positively denies it.    He however admits that about the last of June or first of July, which was prior to his purchase from Holmes, he had a con- versation with complainant in which the latter spoke of his claim on the mill property, but says he did not inquire of' complainant what claim he had.    He represents that this conversation was introduced by complainant, and that he, White, supposed it to relate to the original mortgage only, and says, in effect, that complainant did not mention to him the claim upon the note; while the evidence on the part of complainant is that he did mention this. We think the weight of the evidence is in the affirmative, that such actual notice was given.  We think it entirely clear, upon his own evidence and that of other witnesses on the defense, that he had such notice at least, of the exist- ence of these papers in the hands of Manzer, as to make it his duty to inquire particularly of complainant before mak-- ing his purchase.    To say nothing of the admission in his answer, that before he had paid said original mortgage, or the judgment on the attachment suit, he heard rumors of certain papers between Holmes and complainant, relating to the property, in possession of Manzer; and his duty, if he failed to see the papers, or to get information of Manzer con- cerning their contents, was to inquire of complainant, before making such payments.    He admits in his testimony that

before the purchase was made by him of Holmes and wife, they told him, not only of the original mortgage which was recorded, but, as he understood them, that there was a kind ·of contract and bond in Manzer's hands; that in case Holmes failed to pay the mortgage, Hosley was to take possession of Holmes' interest in the mill, by paying him back the amount stated in the bond, which was two thousand dollars or thereabouts.   Even this was enough to put any prudent man on his guard against purchasing until he should ascertain what these papers were, or till he should have inquired of the complainant as to the nature and amount of the incumbrance.

And Mrs. Holmes testifies: " I was present at the time Mr. White came to buy the property of my husband.   I then told him there were some sealed papers in the hands of Mr. Manzer.   I told him there was a mortgage to be paid, of about two thousand one hundred dollars.   I told him if that was not paid by the 9th of January, and they took the property, they were to pay us two thousand five hundred dollars."   Again : " At the time of the talk with Mr. White, I told him there was a contract in the hands ·of Mr. Manzer.   I told him all I could recollect about the bond."   Defendant Holmes testifies to telling White substantially the same things.

It was therefore clearly the duty of White, as an honest, prudent man, before venturing on this purchase on the mere verbal representations of the vendor, either to learn the actual contents of the papers in Manzer's hands, or to inquire of the complainant as to the extent of his rights in the property under those papers.   He had sufficient notice to put him upon inquiry, and we are entirely satisfied that complainant, in the conversation White admits he had with him, said nothing which would relieve him from the duty to make such inquiries.

He therefore can not be considered a *bona fide* purchaser without notice, and the property in his hands is liable to the complainant to the same extent as if it had remained in the hands of Holmes.

The decree of the court below, dismissing the bill, must be reversed, with costs to complainant in both courts, and a decree entered in this court for a foreclosure and sale, as prayed by the bill, for the one-half of said note of six hun-- dred and sixty-two dollars and seventy-nine cents, with interest thereon at the rate of ten per cent., and such amount of the taxes and insurance stated in the bill as complainant may prove upon a reference; and the record must be remitted to the court below for the purpose of executing this decree.

The other Justices concurred.