ISAAC PENNINGTON v. JOHN B. PENNINGTON.

*Deed—Delivery—Rescission.*

1. Until a deed is delivered to the grantee to become *presently* operative, the grantor retains the right to rescind or recall it.
2. In this case the Court find that the deed was legally recalled, and decree its cancellation.

Appeal from Clinton. (Smith, J.)   Argued June 21, 1889.   Decided June 28, 1889.

Bill filed for the cancellation and removal from record of a deed.   Complainant appeals.   Decree reversed, and one entered granting relief prayed for.   The facts are stated in the opinion.

*H. E. Walbridge* and *L. W. Hill* (*H. F. Pennington*, of counsel), for complainant.

*O. L. Spaulding* and *H. J. Patterson*, for defendant.

CAMPBELL, J.   Isaac Pennington, the original complainant, who has died since the appeal, filed his bill for the cancellation and removal from record of a deed to the defendant, which was executed August 12, 1887, and deposited for safe keeping with Ezekiel Niles, and not to be delivered during complainant's life.ʳ Whether to be delivered then, at all events, is disputed.   About November 1, 1887, defendant

procured an order from complainant to Niles to let him have the deed, and it was delivered to defendant, who recorded it. Complainant claimed that the order was given in order that the deed should be taken to complainant, so that arrangements might be made for taking from defendant security to make some provisions for other heirs, which complainant intended to require of him as a condition for letting him have the title, the whole arrangement to take place after complainant's death.

Defendant, in his answer, says that complainant requested defendant to advance him certain money to the amount of about $1,000, and defendant objected to doing so unless the deed was put on record, which complainant consented to, and defendant claims he has always been ready to carry out this verbal agreement. The court below made a decree, which is not in harmony with the claim or testimony of either party, by canceling the record and ordering the deed to be delivered to Niles, to be held till complainant's death, leaving complainant and his wife possession for life, and setting the deed aside altogether as to the homestead, which was embraced with the other property.

The testimony of complainant and Philo Doty, who received all his instructions, and on whose advice complainant conceived the scheme of making deeds operative in future, is full and consistent that it was understood the arrangement did not contemplate that Niles should hold the papers except subject to complainant's right to rescind or alter them at pleasure. Two other deeds were held under the same arrangement. Mr. Niles, who drew the papers in an adjacent room, and did not hear all the conversation, received no instructions as to the terms of delivery after complainant's death, but testifies distinctly that he understood he held them subject to complainant's order, and, on a motion for leave to take further testimony, he made a positive affidavit to the same effect. It appears further that

complainant did not mean at that time to have it known that any such steps had been taken. The fact got out, as such facts are apt to do, by the inquisitiveness or the lack of discretion of some one who should have been more silent. As the only persons who knew anything of the matter agree entirely in their account, which is reasonable and probable in itself, with nothing to contradict it, we have no doubt that the deposit with Niles was never meant to be final.

It is equally clear to us that complainant was only led to having the deed handed to defendant for the purpose of showing defendant what was intended, and to induce him to make the papers to secure certain money to the other heirs, upon securing which the deed would be allowed to become operative at complainant's death. Defendant's story is that he was to have the deed at once, to be operative at once, without even security that he would advance such moneys as complainant might wish to the extent of $1,000. The story is all the more improbable, because it does not seem to have occurred to any of the parties that the homestead would not pass with the rest, and no doubt the fact that the estate covered by the deed was, if conveyed, of very considerable value, made it proper and desirable to compel defendant to make a provision larger than would have been otherwise to be expected. And it is contrary to all good sense to suppose that complainant meant to turn himself and wife out of doors and give defendant full rights, as he would have had by an absolute delivery without conditions.

Unless the complainant made a delivery to defendant to become presently operative, the deed was never delivered to him at all, and the complainant retained the right to recall or rescind it, which he has exercised. What he might have done had defendant done his duty in carrying the deed to him instead of recording it, we need not inquire. In our opinion, the deed was legally recalled, and became inoperative.

The decree below should be reversed, and a decree entered canceling it altogether, with costs against defendant.

The other Justices concurred.