115   531<br>d126   190

CONNOR *v.* BUHL.

1. VENDOR AND PURCHASER—OFFER AND ACCEPTANCE.

After certain preliminary negotiations, defendant submitted to plaintiff a list of property belonging to the latter which defendant professed to be willing to take in exchange for land belonging to him. The list showed the value of each description, the amount of supposed incumbrance, and the net value of the equity, which latter aggregated a sum slightly in excess of the value of the land which defendant proposed to exchange. Plaintiff thereupon executed deeds of the property listed, and placed them in the hands of a third person for safe-keeping. Soon afterwards it developed that the total incumbrance on the property selected by defendant and described in the deeds was greater by several thousand dollars than appeared in the list made by defendant. *Held,* that defendant was justified in refusing to accept the deeds.

2. Same.

    The fact that the deeds executed by plaintiff purported to be subject only to such incumbrances as were named in defendant's proposition was immaterial, the incumbrances not having been actually reduced, since defendant was not bound to accept plaintiff's covenant so to reduce them.

3. Same.

    Nor could plaintiff, in the absence of an agreement in writing by defendant to accept other lands, complete the contract by tendering deeds of lands equaling in value the increased incumbrance.

4, Deeds—Delivery—Agency.

    A delivery of a deed is not effected by placing it with the common agent of the parties for safe-keeping until the consummation of the contract between the parties.

Error to Wayne; Carpenter, J.  Submitted November 4, 1897.  Decided January 18, 1898.

*Assumpsit* by Jeremiah Connor against Theodore D. Buhl for the breach of a contract for the exchange of land.  From a judgment for defendant on verdict directed by the court, plaintiff brings error.  Affirmed.

*William Look, Ira G. Humphrey,* and *John Atkinson,* for appellant.

*C. A. Kent,* for appellee.

Montgomery, J.  The plaintiff brought this action to recover damages for the breach of an executory contract for the exchange of land.  The estate of C. H. Buhl owned a farm of 768 acres of land in Monroe county; and plaintiff owned a large number of parcels of land in the city of Detroit, consisting of houses and lots, valued at something like $235,000, and incumbered in various amounts, aggregating $122,700, as was supposed.  After some oral negotiations, defendant, on September 5, 1894, addressed the following letter to one F. B. Trout, who was acting for the plaintiff, and, as he testifies, for defendant also:

"*Dear Sir:* After talking with you this morning, I can hardly agree with you on the proposition made by Mr. Connor for the farm, at $65 per acre. We have held the price of this farm at $75 per acre; but, as my time is so taken up that I cannot look after the property, I would be willing to divide the difference, and make the price $70 per acre. I will take my choice of the properties you own, at a fair valuation, either by appraisement, or value as we may agree upon mutually. I will also assume to take the mortgages on the property I select. All taxes must be paid to date by you.

"Yours respectfully,
"Estate of C. H. BUHL,
"By T. D. BUHL, Administrator."

On this letter was indorsed the following:

"Accepted on appraisements of Union Trust Company heretofore made, and herewith attached.
"JEREMIAH CONNOR."

Defendant was apparently unwilling to accept the appraisement of the Union Trust Company previously made, and also desired that Prentis avenue should be kept open, and therefore wrote a statement and letter as follows:

"We have had the property of Mr. Connor looked over very carefully, and we find the values made by the Union Trust Company are valued as high, as the property has been sold on any of the streets referred to. We find some of the houses much out of repair, and many of them too highly valued."

This was followed by a description of the property which the defendant was willing to accept, showing the value of each description, the amount of supposed incumbrance, and the net value of the equity, which latter aggregated $54,115,—a sum slightly in excess of the value of the farm; and the communication concluded with the following:

"As Prentis avenue is a private roadway, and not a legal street, we must have a guaranty that the street must be left open as now laid out.
"THEODORE D. BUHL.".

After this paper was executed, plaintiff executed deeds of the property described in the list, and, as he testifies,

"placed them in Mr. Trout's hands, to keep in his safe."
Plaintiff also testifies that Mr. Rathbone, acting for the
defendant, and Mr. DeLong, acting for the plaintiff, went
around, October 15th, to the tenants occupying the prop-
erty, and notified them that the rents, for the future, were
to be paid to Mr. Buhl. The deeds deposited with Mr.
Trout were acknowledged on the 8th of November. On
the 27th of November, Mr. Trout wrote Mr. Buhl a letter
stating, in substance, that the total incumbrances on the
property selected by Mr. Buhl were greater by several
thousand dollars than appeared in the list made by de-
fendant, and adding: "It will be necessary for you to
select further lands for this amount. Mr. Connor has de-
posited with me deeds for all the lands selected, and is
ready to deposit deeds for the rest, when selected." Plain-
tiff received a letter from defendant, dated November
24th, but which he testifies he received some days after its
date (inferably, after the receipt of Mr. Trout's letter),
which reads as follows:

"Mr. JEREMIAH CONNOR,
                "Detroit.
"*Dear Sir:* It has become necessary for us to make
other arrangements in regard to the Buhl farm, and we
herewith withdraw the proposition to exchange the Buhl
farm for your property.
                "Yours respectfully,
                        "THEODORE D. BUHL."

It should be further stated that the deeds executed by
plaintiff purported to be subject only to such incum-
brances as were named in Mr. Buhl's proposition. At the
close of the testimony, the circuit judge permitted an
amendment counting upon the contract as an executed con-
tract, and claiming as damages the value of the Buhl
farm. The circuit judge directed a verdict for defendant,
and plaintiff brings error.

It is conceded, very properly, that the indorsement on
Mr. Buhl's first proposition, of September 5th, was not an
unconditional acceptance, and that the minds of the parties

had not then met. The counter proposition of Mr. Buhl, in which a list of the lands was given, and a new valuation placed on them, did not make a complete contract. It was but a proposition. It may be assumed that if the plaintiff had executed deeds of the property corresponding to the specifications contained in this proposition, and such deeds had in fact conveyed the property, subject only to the incumbrances named in the proposition of Mr. Buhl, and the deeds had been accepted by the defendant, this would have made a complete agreement. But the evidence fails to show that the plaintiff had reduced the incumbrance to the amount named in defendant's proposition, and we think defendant was not bound to accept plaintiff's covenant to reduce the mortgages. *Kelsey* v. *McDonald*, 76 Mich. 188. This was not what the proposition called for, nor was there any performance of the condition of the guaranty relating to Prentis avenue.

It is contended by plaintiff's counsel that the deeds were accepted by defendant, as they were deposited with Trout, who was defendant's agent. Mr. Trout testifies that he was agent of both parties, and testified to his possession of the deeds as follows:

"Col. Humphrey (plaintiff's attorney) and myself took the deeds (that is, I took the deeds, and Col. Humphrey was with me), and we went down to defendant's store; and I told him that we had the deeds all executed and ready to deliver, and asked him for his deed. It was not then ready, he told me. He said to me to keep those deeds, and that he would be ready in a few days; that Mr. Kent had not quite got through with the abstracts yet.

"*Q.* Were you referred in any way by defendant to Mr. Kent?

"*A.* Yes; always referred to Mr. Kent.

"*Q.* What did he tell you to do with reference to Mr. Kent, if anything?

"*A.* He told me to see Mr. Kent in regard to the abstracts. I went quite frequently to Mr. Kent's office after that, and did considerable business with him, preparing abstracts and getting them brought down. There was some dissatisfaction, etc.

"*Q.* What can you tell us as to whether the deeds and abstracts were finally approved or disapproved?

"*A.* They were, by both defendant and Mr. Kent.

"*Q.* For whom were you acting, in retaining the deeds?

"*A.* Mr. Buhl.

"*Q.* Acting under his directions, as I understand you?

"*A.* Yes, sir."

As we have seen, plaintiff testifies that the deeds were placed in the hands of Mr. Trout, to keep in his safe. There is but one inference to be drawn from this testimony, and that is that Mr. Buhl has not accepted the deeds absolutely, or disarmed himself of the right to insist that the incumbrance should be reduced to the amount named in the schedule.

The plaintiff afterwards made deeds of other lands to make up the deficiency; but defendant had not undertaken, by any agreement in writing, to accept other lands, and did not accept the last-named deeds.

The direction of the circuit judge was right.

The judgment is affirmed.

The other Justices concurred.