KOCH *v.* KOCH.

ANTENUPTIAL CONTRACT—SPECIFIC PERFORMANCE.

* Bill filed to enforce the specific performance of an antenuptial contract. *Held:*

1. That the defendant failed to prove that the contract was obtained by fraud.
2. The agreement, and the mortgage and note mentioned in it, were executed before marriage, and left with a third party, to be handed to the parties after the marriage. After the marriage the defendant received the note and mortgage, and her husband the contract. Both the contract and the mortgage were recorded. *Held*, that the delivery by the third party related back to the first delivery, and made the contract binding.

Appeal from Wayne; Frazer, J. Submitted February 13, 1901. Decided March 26, 1901.

Bill by Louis Koch, executor of the last will and testament of Felix Koch, deceased, and others, against Katherine G. Koch, to enforce the specific performance of an antenuptial contract. From a decree for complainants, defendant appeals. Affirmed.

Complainants are heirs and sole devisees, and the defendant the widow, of Felix Koch. In his will he left

---

* Head-notes by GRANT, J.

nothing to his wife. She filed a petition to secure her rights as a widow in his property. Complainants thereupon filed this bill to enforce the specific performance of the following antenuptial contract, executed January 7, 1888:

"*Whereas*, marriage between said parties is contemplated; and *whereas*, both said' parties desire that said first party shall pay said second party a sum of money in full satisfaction and discharge of all the right, title, interest, dower, and claim for support which said second party will have, by reason of such marriage, in the property of said first party, both during his lifetime and after his decease, except the right to claim support during the lifetime of first party: Now, therefore, in consideration of the premises and said contemplated marriage, said parties agree:

"Said first party, upon the delivery of this agreement, shall execute and deliver to said second party his note and mortgage for two thousand dollars, payable at the death of said first party, without interest. If said second party should die before said first party, then the amount of said mortgage shall be one thousand dollars, to be paid to her heirs.

"Said second party, in consideration of the premises and of said note and mortgage, the receipt whereof is hereby confessed and acknowledged, hereby releases and forever discharges all the right, title, interest, claim, dower, and demand which she will have or be entitled to by reason of such marriage in the property, both real and personal, of said first party, both during his lifetime and after his decease, except the right to support during his lifetime; it being the desire of both parties that said second party shall have no interest, claim for support, right of dower, or demand of any kind in or to the property of said first party at any time, except as above provided."

This contract and the note and mortgage were duly acknowledged, delivered, and recorded. The defendant in her answer set up two defenses: (1) That it was obtained by fraud; (2) that it was not executed until after the marriage. Testimony was taken in open court, and decree entered for the complainants.

*James H. Pound,* for complainants.

*Lemuel H. Foster (Foster, Frazer & Aldrich,* of counsel), for defendant.

GRANT, J. (*after stating the facts*). 1. At the time of the marriage, Mr. Koch was 57 years old, and defendant 52. He had 8 children by his first marriage, the youngest of whom was then 10 years old, and one was weak-minded. She had been married twice; had three children by her first husband, and one by her second. They were of full age. Her first husband died. From her second she was divorced. She had known Mr. Koch but six weeks before she married him. It was not a marriage of love, but of convenience. Soon after his wife died, he went to defendant with a view to employ her as his housekeeper. She testified, "I told him I would be nobody's housekeeper."

The alleged fraud consists in representing to her that he owned only 40 acres of land. It was worth between $2,500 and $3,000. Under her claim, she was willing, in consideration of marriage, to take from his family fully two-thirds of all his property. She was worth more than this in property obtained from her former husbands. The marriage contract was drawn by Mr. Stellwagen, a lawyer of ability and repute, in the city of Detroit. He explained it fully to her, and told her that she would obtain more property as his widow, in case of death, than she would by this contract. Her claim, therefore, that she supposed he was worth only 40 acres of land, is not sustained. The court below reached the correct conclusion upon the question of fraud.

2. It is urged that the contract was not delivered until after the marriage, and therefore is only binding at her option, under 3 Comp. Laws 1897, § 8934. Both parties went to Mr. Stellwagen, who, at their request, after agreeing upon the conditions, drew the contract, note, and mortgage. They were then, by mutual agreement, left with Mr. Stellwagen; the contract to be by him surren-

dered to Mr. K., and the note and mortgage to Mrs. K., upon the consummation of the marriage. After the marriage they went to Mr. Stellwagen's office, obtained the papers from him, and she had her mortgage recorded, and he the contract. The parties left these papers with Mr. S., to be delivered upon the happening of a certain event, namely, marriage. The event happened, and the papers were then delivered by their custodian under the agreement, and by the request of both. No one of the cases cited by defendant's counsel holds that such a delivery, either of a deed or a contract, is not valid. Some of them are cases where there was no contract relation, but where a grantor—in most cases a parent—had made deeds designed to take effect in the future, but over which he kept control until his death. *Taft* v. *Taft*, 59 Mich. 185 (26 N. W. 426, 60 Am. Rep. 291); *Pennington* v. *Pennington*, 75 Mich. 600 (42 N. W. 985).

An examination of *McCullough* v. *Day*, 45 Mich. 554 (8 N. W. 535), and *Connor* v. *Buhl*, 115 Mich. 531 (73 N. W. 821), will show that they are not in point.

When, pursuant to the agreement, Mr. Stellwagen, the custodian, delivered the contract, note, and mortgage, and the parties accepted them, that delivery related back to the first delivery, and made the papers the executed contracts of the parties at the time they were signed, acknowledged, and deposited with Mr. Stellwagen. This contract barred her dower and all interest in her husband's estate, under 3 Comp. Laws 1897, § 8933.

The decree is affirmed.

The other Justices concurred.