JOHNSON v. BECKER.

1. DEEDS—VALIDITY.
    Life lease of farm by husband to wife and warranty deed by
    them to daughter, to be delivered after his death, and mort-
    gage to wife by daughter, held, not testamentary in character,
    but valid transaction.

2. SAME—DELIVERY TO THIRD PARTY.
    Deed delivered to third party to be delivered to grantee after
    grantor's death, held, to be valid delivery, vesting legal title
    in grantee.

3. TRUSTS—SUFFICIENCY OF EVIDENCE.
    Evidence that parents placed title to farm in daughter's name
    to insure son's getting his share thereof and to prevent his
    wife from sharing therein, together with admissions of

Delivery of deed to third person or record by grantor as a
delivery to the grantee, see annotation in 9 L. R. A. (N. S.) 224.

daughter after parents' death that her brother was entitled to one-half interest in proceeds from sale of farm, *held*, to establish that she held one-half interest in trust for him.

4. SAME—ESTOPPEL.

Beneficiary of one-half interest in farm, who was present when contract of sale was executed, consented to its sale, and accepted his share of first payment, is estopped from questioning validity of contract or regularity of sale.

5. SAME—CONVEYANCE BY TRUSTEE.

Conveyance by trustee ordinarily effects complete transfer of beneficial as well as legal estate.

6. SAME—PURCHASER FROM TRUSTEE NOT RESPONSIBLE FOR APPLICATION OF PAYMENT.

Purchaser of property from trustee with knowledge of beneficial interest is not responsible for application, in accordance with rights of beneficiary who consented to sale, of money paid to trustee (3 Comp. Laws 1915, § 11586).

7. SAME—TRUSTEE LIABLE TO ACCOUNT FOR TRUST FUND.

Trustee who, after sale of property, repudiated trust, is held liable to account for proceeds unaccounted for, together with interest thereon from date of receipt.

Appeal from Wayne; Merriam (DeWitt H.), J. Submitted April 25, 1930. (Docket No. 123, Calendar No. 33,688.) Decided June 2, 1930.

Bill by Edgar E. Johnson against Margaret M. Becker and others to declare and enforce a trust in real estate. Cross-bill by Burt Eddy Taylor, one of the defendants, against plaintiff and defendant Margaret M. Becker for an accounting. From a decree dismissing the bill, plaintiff and cross-plaintiff appeal. Reversed as to defendant Margaret M. Becker. Affirmed as to defendant Burt Eddy Taylor and B. E. Taylor Realty Company.

*Oxtoby, Robison & Hull* (*Stewart Hanley,* of counsel), for plaintiff.

*Washington I. Robinson,* for defendant Becker.

*Campbell, Bulkley & Ledyard* (*Selden S. Dickinson* and *Robert E. McKean,* of counsel), for defendants Burt Eddy Taylor and B. E. Taylor Realty Company.

POTTER, J. Plaintiff filed a bill of complaint against defendants to construe written instruments, enforce specific performance, declare and enforce a trust in real estate or the proceeds thereof, for accounting, and other relief. From a decree dismissing the bill of complaint, plaintiff appeals.

Plaintiff's father, Thomas H. Johnson, owned 160 acres of land near Redford, Wayne county, Michigan. He and his wife, Mercy E. Johnson, had two children, plaintiff Edgar E. Johnson, and defendant Margaret M. Becker. Plaintiff, in 1888, married Ida Pierce, with whom he lived for about 10 years. After marriage, plaintiff's wife developed epilepsy. Plaintiff did not prosper. With the consent of his father, mother, and sister, plaintiff left his wife and family, and went to the Pacific coast to live, keeping in touch with his parents and sister by correspondence with the latter. Thomas H. Johnson suffered from cancer. He disliked plaintiff's wife and did not want her to share in his property after his death. He consulted Wallace Grace, a notary public in Redford, as to how to so fix his property as to protect his wife, Mercy E. Johnson, so long as she should live, divide his property equally between his two children, and prevent plaintiff's wife, Ida, from sharing therein. To effect this object, upon the advice of Wallace Grace, he made and executed a life lease to his wife, Mercy E. Johnson, of his farm of 160 acres in Wayne county, and a warranty

deed of the farm to his daughter, Margaret M. Becker, was executed by Thomas H. Johnson and his wife, Mercy E. Johnson, which deed was delivered to Wallace Grace to be delivered after the death of Thomas H. Johnson. The farm was of the estimated value of $16,000, and Margaret M. Becker executed a real estate mortgage for $8,000 to Mercy E. Johnson. The note, to which the mortgage was collateral, was as follows:

"$8,000          Redford, Michigan, May 6, 1912.

"For value received, on demand, I promise to pay Mercy E. Johnson, her legal representatives or assigns the sum of $8,000, with interest after payment is demanded at the rate of six per cent. per annum. This note is secured by a certain indenture mortgage made and executed by Margaret M. Becker to the above named Mercy E. Johnson, bearing even date herewith, and being collateral hereto. It is expressly understood and agreed that the said Margaret M. Becker is not to be held personally liable on this note and in consideration therefor the said Margaret M. Becker hereby agrees to release and convey the undivided one-half interest in the lands, premises and property in said mortgage mentioned and described, to the said Mercy Johnson, her legal representatives or assigns said conveyance to be full payment and satisfaction of said mortgage and of the indebtedness secured thereby.

(Signed) "MARGARET M. BECKER."

All of these instruments were executed on the same day. It is claimed by plaintiff this real estate mortgage was assigned at the same time, as a part of the same transaction, by Mercy E. Johnson to plaintiff. This is disputed. After the death of Thomas H. Johnson, Ida Johnson, plaintiff's wife, desired to share in the property of Thomas H. Johnson which she supposed descended to her husband,

and filed a petition in the probate court of Wayne county, in the matter of the estate of Thomas H. Johnson. In the meantime, the deed from Thomas H. Johnson and wife to defendant Margaret M. Becker had been recorded, and the probate proceedings were dropped by reason thereof. Plaintiff continued in the west. His mother, Mercy E. Johnson, died, and later his wife, Ida, died. For some time prior to her death she had been an inmate in the hospital for epileptics at Wahjamega. In the meantime Detroit grew rapidly. The Johnson farm became suitable for subdivision purposes. It increased in value from approximately $100 an acre until it was worth more than $100,000. Burt Eddy Taylor, a real estate operator in Detroit, desired to purchase this farm, and opened negotiations with defendant Margaret M. Becker to acquire it. Margaret M. Becker continued to correspond with the plaintiff. May 8, 1920, she wrote him:

"You see, if we sold at $1,000 per acre that would be $160,000. Well, the increase would be $800 per acre since 1913 anyway, and that is $128,000 that we will have to pay excess tax on and give it to the government; that is 4% on $128,000, is $5,120. There is nothing for us to deduct, as there is no mortgage on it, and I think we can do better by holding on another year anyway. * * * I know we are getting old, but a year or two won't make so much difference in our age, and it might make a difference in the price we get. * * * We want to get all there is in it, and not let the fellow that buys it make three or four times as much in just a few months than we have been years in getting. * * * So we had better hang on to the farm."

January 11, 1923, she wrote:

"If we sell I will have Ed's half fixed so it is in Ed's name and everything will be paid to each of

us separately. My half in my name, your half in your name, because Ida is gone now and there will be no danger of trouble from her."

February 5, 1923, she wrote:

"Taylor asked me how much I wanted down and I said $30,000, $15,000 for each of us.   *   *   *   Now, I told Mr. Taylor that the deed of the place was in my name, and I told him the reason.   *   *   *   And I told him when I sold it, I wanted it fixed so as he would pay you your half, make your payment to you.   *   *   *   Mr. Taylor said when he comes to the final settlement of the place that it would be the best for my brother to be here and Mr. Taylor will be back from Florida about the middle of March. Now, you had better come here so as to get this thing all straightened out. This is some more trouble on Ida's account. Pa had to put the deed all in my name on Ida's account.   *   *   *   When you come we can talk over how we will sell it. You had better come, as it is going to be a complicated thing for them to figure out."

This correspondence shows the defendant Margaret M. Becker understood that plaintiff had a half interest in this farm; that Taylor knew about it, and he advised Margaret M. Becker to write plaintiff to be present when the sale was finally consummated. In pursuance of these suggestions to plaintiff from defendant Margaret M. Becker, he came to Michigan, and was present when the farm was sold on contract to Taylor for $140,000.

Defendant Taylor admits he knew the defendant Margaret M. Becker did not claim to own the farm absolutely; that she represented her brother had a half interest therein, and when the property was finally sold, contracts had been prepared by Taylor, one purchasing for $70,000 the interest of plaintiff, and another for $70,000 purchasing the interest of

defendant Margaret M. Becker in the real estate. April 3, 1923, a contract was entered into between Margaret M. Becker and defendant Taylor whereby she sold the farm for $140,000, $20,000 of which was paid down and $120,000 of which was to be subsequently paid. At the time this deal was made, plaintiff was present, and after the defendant Margaret M. Becker paid certain real estate commissions, the balance of the payment of $20,000 made by Taylor to her was divided equally between herself and plaintiff, who shortly afterward returned to the Pacific coast. Subsequently plaintiff wrote to Taylor about payments not being made to him which he believed due, and Taylor suggested to plaintiff he take up with his sister, defendant Margaret M. Becker, the question of receiving his money. No further payments were made to plaintiff, and he came to Michigan, made some investigation, was referred to counsel, who made further investigation, and this suit resulted. After a hearing, in which a large amount of testimony was taken, the trial court dismissed the bill of complaint, and plaintiff appeals.

Many questions are presented by the record and briefs of counsel.

It is claimed that, taking the life-lease, deed, mortgage, and note together, executed by Thomas H. Johnson and wife and Margaret M. Becker, May 6, 1912, they evidence an intent on the part of Thomas H. Johnson to make a testamentary disposition of his property. If the intent of Thomas H. Johnson was legally carried out by the execution of these papers, plaintiff took a one-half interest in the property, assuming the mortgage and note executed by the defendant, Margaret M. Becker, to Mercy E. Johnson, her mother, was assigned to plaintiff, as

claimed by him. If Thomas H. Johnson's intent was testamentary in character, it is doubtful if it could be consummated by a deed. *Culy* v. *Upham,* 135 Mich. 131 (106 Am. St. Rep. 388). If the entire transaction failed for this reason, plaintiff would be entitled to a one-half interest in the real estate under the statutes of descent. We think the transaction of May 6, 1912, was not testamentary in character, and was a valid one.

It is conceded the deed from Thomas H. Johnson and wife to defendant Margaret M. Becker was delivered to Wallace Grace to be held by him until after the death of Thomas H. Johnson, when it was to be recorded.

"The authorities are all agreed that no deed can be valid without delivery by the grantor. It must be made operative by his act while he is able to act. * * * Any deed which is to be maintained after death must have been made operative by some valid delivery by the grantor during life." *Taft* v. *Taft,* 59 Mich. 185 (60 Am. Rep. 291); *Culy* v. *Upham, supra.*

"A delivery of a deed to a third person for the benefit of the grantee, in the absence of anything conveying a different intent, is as much a delivery as if made to the grantee himself." *Hosley* v. *Holmes,* 27 Mich. 416 (syllabus); *Cooper* v. *Cooper,* 162 Mich. 304.

"Until a deed is delivered to the grantee to become presently operative, the grantor retains the right to rescind or recall it." *Pennington* v. *Pennington,* 75 Mich. 600 (syllabus); *Cooper* v. *Cooper, supra.*

"Of course the deed where left on deposit this way might before acceptance be recalled, but until recalled might be accepted." *Thatcher* v. *St. Andrew's Church,* 37 Mich. 263.

There is no claim that Thomas H. Johnson or anyone authorized by him so to do, ever recalled or attempted to recall from Wallace Grace the deed from himself and wife to defendant Margaret M. Becker. Thomas H. Johnson and wife must have intended to pass title presently by this deed, else the mortgage by Margaret M. Becker to Mercy E. Johnson would not have been valid. We think there was a valid delivery of the deed. The legal title to the farm vested in defendant Margaret M. Becker.

If the mortgage and note executed by Margaret M. Becker to her mother, Mercy E. Johnson, were not assigned by Mercy E. Johnson to plaintiff, as claimed by him, when or after they were executed, then upon the death of Mercy E. Johnson, plaintiff, under the statutes of descent and distribution, became the equitable owner of an undivided one-fourth interest in the lands in controversy.

We do not, in view of the record presented, consider it important that when, after the death of Thomas H. Johnson, Ida Johnson, plaintiff's wife, filed a petition with the probate court of Wayne county to administer his estate, such administration was defeated by evidence of the deed in question. That was one of the things Thomas H. Johnson desired to accomplish, and his wishes in this particular were carried out and supported by the deed of the farm from her father and mother which Margaret M. Becker held.

Defendant Margaret M. Becker and plaintiff continued in correspondence. After the death of Thomas H. Johnson and his wife, Mercy E., and after the death of Ida Johnson, wife of plaintiff, there was no apparent reason, unless Ida Johnson may have had debts or funeral expenses, why plaintiff's interest in the farm should not be turned over to him.

What interest did the plaintiff have? It is undisputed that he had and must have had, if we are to give the papers of May 6, 1912, effect, some interest in the land, regardless of whether the mortgage and note given by defendant Margaret M. Becker to her mother, Mercy E. Johnson, were assigned to plaintiff by Mercy E. Johnson or not. The letters of the defendant Margaret M. Becker are convincing admissions that she held the legal title of this farm in part in trust for plaintiff. In *Kerschensteiner* v. *Northern Michigan Land Co.*, 244 Mich. 403, this court considered section 11975, 3 Comp. Laws 1915, and the cases thereunder. Defendant Margaret M. Becker admittedly held title to some part of the real estate in trust. This is shown by the promissory note executed by her when the deed of Thomas H. Johnson and wife was made and executed. The question is the extent of that interest. Considering the original instruments, letters, acts, and conduct of defendant Margaret M. Becker, we think the proof establishes it was the understanding of defendant Margaret M. Becker and plaintiff that she held the absolute title to a one-half interest in the farm and the title to the other undivided one-half interest therein in trust for plaintiff.

Is defendant Taylor a *bona fide* holder for value of the farm? The proof shows beyond question that Taylor knew from defendant Margaret M. Becker all about the title to this property. Separate contracts were prepared by Taylor for the purchase of an undivided one-half interest of the farm from the plaintiff and from the defendant. On the day these contracts were to be executed and the farm sold to Taylor, plaintiff was present. He made no objection to the purchase by Taylor of the farm from his sister. He stood by and saw Taylor pay over to his sister $20,000. He assented thereto, at

least he did not object to the consummation of the sale by his sister, defendant Margaret M. Becker, to Taylor. After the payment of some commissions which had been agreed upon, plaintiff accepted from his sister his share of the proceeds of the first payment of $20,000. We think defendant Taylor bought the property with full knowledge of plaintiff's rights, and that plaintiff, by his acts, conduct, and acquiescence, is estopped from questioning the validity of the contract or the regularity of the sale to Taylor.

"It is now a well-established principle that where the true owner of property, for however short a time, holds out another, or, with knowledge of his own right, allows another to appear, as the owner of or as having full power of disposition over the property, the same being in the latter's actual possession, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Or where others are innocently induced to acquire rights in derogation of the secret or undisclosed claims of those who cause such action, the rights so acquired are secure whether contested at law or in equity. Such rights do not depend upon the actual title or right or authority of the party with whom they have directly dealt, but are derived from conduct of the real owner which precludes him from disputing against them the existence of the title or right or power which he caused or allowed to appear to be vested in the party making the sale." Bigelow on Estoppel (6th Ed.), p. 607.

"A person who keeps silent when he should have spoken will not in a court of equity be heard to speak when he should keep silent. A person who stands by and permits another to deal with his property as his own, the purchaser relying upon appearances, will not be permitted, after the transaction is closed without objections from him, to question it." *Peters v. Canfield,* 74 Mich. 498.

"Where a party has consented that the legal title should, by an absolute conveyance, be passed over to another, * * * he cannot stand by and see third parties acquire rights upon such apparent legal title, and ask for relief which is purely equitable." *Ford* v. *Loomis,* 33 Mich. 121.

A conveyance by a trustee ordinarily effects a complete transfer of the beneficial as well as the legal estate. *Thatcher* v. *St. Andrew's Church,* 37 Mich. 264; *McQuillan* v. *Ayer,* 189 Mich. 566; *Kerschensteiner* v. *Northern Michigan Land Co.,* 244 Mich. 403.

"No person who shall actually and in good faith make any payment to a trustee, which the trustee as such is authorized to receive, shall be responsible for the application thereof according to the trust; nor shall any right or title derived by such person from the trustee, in consideration of such payment, be impeached or called in question, in consequence of any misapplication of such payment by the trustee." Section 11586, 3 Comp. Laws 1915.

Though defendant Taylor was not an innocent purchaser for value, plaintiff is estopped from questioning the validity of the conveyance from the defendant Margaret M. Becker to Taylor, and Taylor is not responsible for the application, in accordance with the rights of plaintiff, of the money paid by him to defendant Margaret M. Becker.

As between plaintiff and defendant Margaret M. Becker and those who claim under her, the funds arising from the sale of the farm in question belong to plaintiff and defendant Margaret M. Becker, each being entitled to an undivided one-half interest therein. The defendant Margaret M. Becker, after the receipt and division of the first payment from Taylor of $20,000, repudiated the trust, and must

be held liable to account for all of that part of plaintiff's undivided one-half interest in the proceeds arising from the sale of this farm which have not been accounted for by her to him, together with the interest thereon from the date of the receipt of such funds by her. _Perrin_ v. _Lepper_, 72 Mich. 454.

The decree of the trial court will be reversed, with costs to the plaintiff against the defendant Margaret M. Becker. It will be affirmed as to the defendant B. E. Taylor and B. E. Taylor Realty Company, with costs. A decree will be here entered in accordance with this opinion.

WIEST, C. J., and BUTZEL, CLARK, McDONALD, SHARPE, NORTH, and FEAD, JJ., concurred.