## SILVENUS A. TAFT v. SMITH T. TAFT.

*Deed of land, delivery of—Retained in possession of grantor to be delivered upon performance of condition, after his death, validity of—Delivery on like condition, to a third party, effect of—Escrow, doctrine of examined—Deposit of deed with third party, to be delivered unconditionally on death of grantor, sustained.*

1. To render a deed valid, as a conveyance of land, it must be made operative by delivery by the grantor, while he is able to act, and if found in his custody at death the proof, or facts amounting to proof, must show an effectual delivery by him in his life-time, by which he thereafter became a mere custodian of the instrument, and when the facts appear there is no room for presumption.

2. A deed of conveyance in present terms is inconsistent with the retention of a life estate and from the time of its delivery as a conveyance, the whole title goes with it, and the deed becomes irrevocable. Such delivery to a third person, intended to make the conveyance operative, is a legal delivery even where the grantee is ignorant of the transfer.

3. A father, about one year before his death, executed and acknowledged a deed to his son, and caused to be drawn up a note for $100 payable to his daughter, which was folded in the deed, and both papers locked up by the father in his bureau drawer, the key to which he kept in his pocket-book, on his person. He directed the daughter to open the drawer, at his death, and on the execution of the note by her brother, to deliver to him the deed, which was done, the key being found in the father's pocket-book, on his person. The father asserted his intention to retain the control of all of his property during his life-time, and said that unless the note was signed by the son, he should take nothing under the deed.

   *Held,* in a suit involving the validity of this deed, that there was nothing to justify the submission to the jury of the question of its delivery. The note was to be executed as a condition precedent to the transfer of the title, and the delivery of the deed was meant to be, and in fact was, posthumous, and therefore void.

4. A father, advanced in years, being desirous of providing for two sons and a daughter, joined with his wife in deeds to the sons, severally, of the principal part of the farm on which the grantors resided, and deposited the deeds with a third party, together with a note for $1,000 payable to the daughter, with verbal instructions to the depositary to keep the papers until the father's death, when on the brothers signing the note, the deeds were to be delivered. At this time the father was sick and gave the custodian of the papers to understand that he did not expect to recover. After his death, the sons signed the note, and the deeds were delivered to them, respec-

59 185 / 73 506
59 185 / 104 556
59 185 / 123 300
59 185 / 126 190
59 185 / 128 353
59 185 / s26NW 426
s60AR 291
133 ¹589
59 185 / 135 ¹184
59 185 / 144 ¹677
59 185 / f147 366
59 185 / 145 ¹567
59 185 / 154 ⁴192
59 185 / 158 ⁴⁵67

tively. The father always asserted his intention to retain control of all of his property until his death, and that unless the notes were signed the grantees should take nothing under the deeds.

*Held,* that the conveyances must be held invalid. That if the deeds had been delivered irrevocably, on the simple condition of transfer to the sons on the death of the father, the transaction might be sustained upon the authority of *Wallace v. Harris,* 32 Mich. 380, and *Latham v. Udell,* 38 Mich. 238, but that this does not rest on the doctrine of escrow.

5. While a deed left in escrow is frequently held to relate back for the purpose of avoiding the difficulty of incapacity of the grantor, or his death occurring before the deed is handed over by the depositary, yet, except for that formal purpose, there is no universal relation, and so far as the authorities go, ancient or modern, they all assume that the relation back is founded on the unintended or unexpected occurrence of some disability without which the second delivery would have been the act, at its date, of the grantor, prevented without his original design.

6. Intermediate rights are valid against such second delivery, which is essential to carry title.

Error to Macomb.    (Stevens, J.)    Argued November 12, 1885.    Decided January 20, 1886.

Ejectment.    Plaintiff brings error.    Reversed.    The facts are stated in the opinion.

*Crocker & Hutchins,* for appellant:

The delivery without reserve of a deed by a grantor to a depositary to deliver the same unconditionally to the grantee therein named, upon the grantor's death, would be a good and sufficient delivery, provided the grantor intended thereby to give a present effect to the instrument.    Any act or words indicating an intention on the part of the grantor to give a present effect to his deeds would constitute a good delivery thereof.    In all cases of this class the fundamental inquiry is: whatever may have been the physical disposition of the instrument, whether the grantor intended the deeds to *operate presently* as his deeds and without condition or reserve: *Thatcher v. St. Andrew's Church,* 37 Mich. 264; *McCullough v. Day,* 45 Mich. 554.

But the delivery of a deed by a grantor to a depositary, with instructions to deliver it to the grantee named therein upon the grantor's death, the grantor during his life-time having dominion over the instrument and intending that it

shall not be an operative conveyance so long as he lives, is not a legal delivery, and will not pass title to the grantee upon being handed over to him by the depositary after the death of the grantor. Nor does the mere lodgment of a deed properly executed and acknowledged, by the grantor in a designated place, but so that it is under his control during life, with the intent on his part that the grantee may after his death take it and then become owner of the land therein described, constitute an effective delivery; the taking and recording of such a deed by the grantee, after the death of the grantor, would be ineffectual to perfect it. The control of the deed by the grantor during life, and his intention that it shall not become an effective conveyance so long as he shall live, invalidates the delivery in each instance. To constitute a valid delivery the grantor must part with the control of the instrument with the intent of giving it a present effect as a conveyance: *Stilwell v. Hubbard*, 20 Wend. 44; *Brown v. Brown*, 66 Me. 316; *Huey v. Huey*, 65 Mo. 689; *Ball v. Foreman*, 37 Ohio St. 132, 139; *Cook v. Brown*, 34 N. H. 460; *Prutsman v. Baker*, 30 Wis. 644; *Younge v. Guilbeau*, 3 Wall. 636; *Byars v. Spencer*, 101 Ill. 429.

If conditions are precedent, inasmuch as the estate does not vest at all until such conditions are fulfilled, the effect of their being set for performance after the death of the grantor is that the estate dependent upon them fails and the grant becomes wholly void. The condition is in effect one impossible of performance: Washburn on Real Property, 448.

*Geo. M. Crocker* and *A. L. Canfield*, for defendant:

Delivery of a deed by the grantor to a third person to be delivered to the grantee after his death is a good delivery: *Wallace v. Harris*, 32 Mich. 380; *Thatcher v. St. Andrew's Church*, 37 Mich. 264; *Latham v. Udell*, 38 Mich. 238.

The deposit of the note with the deed, with instructions to deliver it upon the note being signed did not invalidate the deed. The deed when deposited was an escrow to be delivered upon the performance of a condition: *Graham v. Graham*, 1 Ves. Jr. 275; *Ruggles v. Lawson*, 13 John. 285; *Bostwick v. McEvoy*, 62 Cal. 496; *Frost v. Beekman*, 1 John. Ch. 288, 296–7; *Jackson v. Rowland*, 6 Wend. 666; *State Bank v. Evans*, 3 Green (N. J.) 155, and cases cited; 2 Hilliard on R. P. 305.

A deed may be effectual to pass the title, although possession of it is retained by the grantor. There is the same necessity for the delivery of a gift of personal property, in

contemplation of death, as of a deed of real estate: *Ellis v. Secor*, 31 Mich. 185; *Bostwick v. Mahaffy*, 48 Mich. 342; and the act of delivery has no virtue *per se*, being only evidence of intent to pass title.

Voluntary deeds from parent to child are valid to pass title although retained in the possession and control of the grantor until his death: *Boughton v. Boughton*, 1 Atkyns, 625; *Clavering v. Clavering*, 2 Vern. 475; *Masterson v. Cheek*, 23 Ill. 73; *Reed v. Douthit*, 62 Ill. 348; *Newton v. Bealer*, 41 Ia. 334; *Ellis v. Secor*, 31 Mich. 189.

CAMPBELL, C. J.   Plaintiff, as one of the children and heirs-at-law of Aden Taft, deceased, brought ejectment for an undivided share of two parcels of land owned by his deceased father, which defendant, another son, claims as grantee.   One parcel he claims under a deed made by Aden Taft, but held in his own control until death.   The other he claims under a deed from said Aden Taft, alleged to have been deposited in escrow with Charles F. Mallory, who delivered it to defendant after his father's death.

Upon the trial the whole controversy turned upon the validity of these two deeds.   The court, as to the alleged escrow, told the jury that delivery to a third person, to be delivered to the grantee after grantor's death, is a sufficient delivery, and that if Aden Taft left the deed with Mr. Mallory, with instructions to deliver it to defendant, and he intended thereby to make the deed effectual, and it was so delivered, it was valid.   He further charged that the right to recall the deed would make no difference, if it was not exercised, and that the fact that the deed was not to be delivered until defendant executed a note for his share of $1,000 would not affect it, if actually made; and further, that a delay of several months in closing it would make no difference, and would not invalidate the deed.

As to the other deed the court held that a deposit of it, with a note to be executed by defendant, after grantor's death, to his sister, in a locked bureau drawer, to which he kept the key in his pocket-book, in his pocket, and which so remained till after his death, informing grantee of it, and directing that, after his death, the deed should be

taken on signing the note, all of which was assented to by defendant, and done, would pass the title, if it was so understood and intended by grantor.

There was no considerable dispute about the facts, which were substantially as follows, leaving out of sight some questions relating to what is claimed to have been an unauthorized admission of testimony, to which, for the present, no reference will be made :

Aden Taft was a farmer, advanced in years, and living on the premises in dispute. Plaintiff was an elder son, who had not lived at home since his youth, and who had been helped in his education. Defendant and another brother, Emery Taft, had been in the neighborhood, and, during his later years, had been of service to grantor in various ways. He appears to have desired to provide for them specially, as well as to make some provision for a married daughter. While his wife was living, in November, 1876, they joined in deeds conveying the principal parts of the land, being east of a highway which traversed the farm, severally to defendant and Emery. Aden Taft also made a will. These deeds and the will he deposited with Charles F. Mallory, together with a note in blank, to be signed by Smith and Emery, providing for the payment, in specified proportions, by each of them, to their sister Mrs. Summers, of $1,000 in five installments, running with interest, to begin after his death. Each of the deeds was upon an expressed consideration of $3,000. All of these papers he gave to Mr. Mallory, with instructions verbally to keep until his death, and thereafter, on the signing of the notes, to deliver the deeds. After the death of Mrs. Taft, the grantor went to Mallory, and said he wanted the will, which he took away with him, and the contents of which do not appear. Mallory asked if he wanted the deeds. He said, "No;" but told him not to give them up to any other person. When the deeds were drawn up by Mr. Mallory, grantor was sick, and did not expect to get well, as he gave Mallory to understand. He died in May, 1879. In January, 1880, defendant and Emery signed the notes, and Mal-

lory gave them the deeds. They had previously called at Mr. Mallory's in September, 1879, but there were some things on which they all desired to reflect and take counsel.

As to the deeds which were retained, and not delivered to Mallory, they were made in April, 1878, about a year before the grantor's death. Mr. Vaughan, a notary, drew up the deeds under grantor's direction, and took the acknowledgment, his son being a witness with him. He also drew two notes of $100 each, payable to Mrs. Summers, one for each of the grantees to sign, and a note was folded in each deed. Aden Taft locked them up in his bureau drawer, of which he kept the key in his pocket-book on his person, and told his daughter, Mrs. Summers, that when he died she should open the drawer, and, on the execution of the notes, deliver the deeds to grantees. This was done after his death, the key being found as he had explained.

The testimony all agrees that he asserted his intention to keep the control of all his property till his death, and that he referred to the mischief that had been done by old persons conveying away their property while they lived, and that he said that unless the notes were made the grantees should take nothing.

The questions presented on the merits are dependent on whether the deed left with Mallory, or the deed left in Aden Taft's bureau drawer, and subsequently obtained by defendant, operated to vest in him a legal estate in either or both of the parcels of land in dispute. The argument necessarily embraced a discussion of two different classes of conveyances, one where kept by the grantor in his own possession until death, and one where placed in the hands of a third person to be delivered after death ; and beyond this is involved the effect of the condition requiring the notes to be given after death, and before the deeds should be given to the grantees.

The first question is whether the deed retained by Aden Taft can be regarded as operative.

The authorities are all agreed that no deed can be valid without delivery by the grantor. It must be made operative

by his act while he is able to act.    There are cases where deeds and mortgages found to have been in custody of the grantor at his death have been held valid, but this has been done on proof, or facts amounting to proof, that he has made an effectual delivery, and become a mere custodian of the deed thereafter.    In every case that we have discovered the question has been whether the deed had been delivered.    No doubt, in some cases presumptions may have been stronger than in others, but the fact has been considered as absolutely essential; and, where the grantor has retained control of the title, it has been regarded as conclusive.

One reason for this is found in the doctrine which, both under the statute of frauds, and independent of it, is equally clear, that the purport of a deed cannot be changed by parol, and that no condition or reservation contrary to its terms is valid.    A deed of conveyance in present terms is inconsistent with the retention of a life-estate, and from the time when the deed is delivered as a conveyance, the whole title goes with it, and it becomes irrevocable.    Some difficulty was apparently raised about delivery, where the grantee was ignorant of the transfer; but it has long been settled that a delivery to any third person, intended to make the conveyance operative, is a legal delivery:    *Doe v. Knight,* 5 Barn. & C. 671; *Hosley v. Holmes,* 27 Mich. 416, and notes; *Souverbye v. Arden,* 1 Johns. Ch. 240.    But a delivery to a third person, or even to the grantee, may be made for other purposes than to give the deed effect:    *Johnson v. Baker,* 4 Barn. & Ald. 440; and the mere fact that it is put into their hands, if not as a completed transfer, will not bind the grantor.    Thus, in *Jackson v. Phipps,* 12 Johns. 418, and in *Austin v. Register,* 41 Mich. 723, the deposit of a deed with a public officer, but not for record, and with no purpose of giving the deed effect, was held no such delivery.    In *Prutsman v. Baker,* 30 Wis. 644, a deed in a third person's hands, subject to the grantor's orders, was held not delivered.    And cases not unfrequently arise where a deed is handed to a grantee for inspection by himself or his counsel, or for some temporary purpose, where there is no completion of the transfer:

JANUARY TERM 1886.

*Johnson v. Baker, supra*; *Gilbert v. North American Life Ins. Co.*, 23 Wend. 43. In *Jackson v. Dunlap*, 1 Johns. Cas. 114, a deed duly executed, but retained by the grantor until the land should be paid for, and he dying before payment, was held inoperative. In *Stilwell v. Hubbard*, 20 Wend. 44, a deed made by the grantor, and retained by him, with the distinct understanding that it would become operative at his death, and found among his papers with a will which it was designed to alter, was held void for want of delivery during life. In *Fisher v. Hall*, 41 N. Y. 416, it was held, after a careful discussion, that where a deed was retained in the grantor's custody, there must be unequivocal proof of a legal delivery, intended to be operative. In *Wellborn v. Weaver*, 17 Ga. 267, where a deed was intrusted to grantor's agent, to be delivered after death, it was also held that there could be no continuance of agency after death, and that there was no valid delivery.

Where the grantor has by will or otherwise asserted that an actual delivery has taken place, such deeds have been maintained, as they have been in some cases where there was a previously recognized obligation to make them, and they purport to have been made in execution of it : *Exton v. Scott*, 6 Sim. 31, is an example of that kind. But a retention of control of the title has always been held inconsistent with the validity of a deed held in custody. *Naldred v. Gilham*, 1 P. Wms. 577; *Uniacke v. Giles*, 2 Moll. 257; *Cecil v. Butcher*, 2 Jac. & W. 565; *Gilmore v. Whitesides*, Dud. Eq. (S. C.) 14. It has been suggested more than once that where the purpose of an arrangement is to retain control of property during life, and provide for a *post mortem* disposition of it, the act is testamentary, and should not be sustained unless made in that form. However this may be, it seems well settled that any deed which is to be maintained after death must have been made operative by some valid delivery by the grantor during life; and whatever disposition has been shown in some cases to raise presumptions on equitable showings, there is no foundation for any rule

that will sustain an undelivered deed; and there is no room for presumption when the facts appear.

In the present case there was nothing which would have justified the submission to the jury of the question of the delivery of the deed of 1878. The note, which was to be executed after Aden Taft's death, was to be executed as a condition precedent to the transfer of the title. It was not executed earlier in fact, and the deed was never delivered earlier. Had Aden delivered it to defendant, to become operative afterwards, on the performance of some condition, it might have presented a very different appearance. But the delivery was meant to be, and was in fact, posthumous, and therefore void. If any equities arise which parties suppose to bring them within the rules of specific performance, they cannot, if existing, make any difference with this deed, and cannot be considered on this record. We do not suggest that such a case is or is not pointed out by the facts. All such considerations are irrelevant.

The other deed held by Mallory depends on other considerations. If the deed had been delivered to him irrevocably, on the simple condition that he should transfer it to defendant on the death of Aden Taft, it would come within several of our own decisions, and might, therefore, be valid upon their authority: *Latham v. Udell*, 38 Mich. 238; *Wallace v. Harris*, 32 Mich. 380. There is much authority elsewhere in favor of the same doctrine. But it has not been decided here, or in most of the cases elsewhere, that this rests on the doctrine of escrow. It was said in *Foster v. Mansfield*, 3 Metc. 412, that where a deed is deposited with a third person, and "the future delivery is to depend upon the payment of money, or the performance of some other condition, it will be deemed an escrow. Where it is merely to await the lapse of time, or the happening of some contingency, and not the performance of any condition, it will be deemed the grantor's deed presently. Still it will not take effect as a deed until the second delivery; but, when thus delivered, it will take effect, by relation, from the first delivery." The same distinction is suggested in other cases, where such a

delivery is held valid : *Wheelwright v. Wheelwright*, 2 Mass. 447 ; *Hatch v. Hatch*, 9 Mass. 307 ; *Fairbanks v. Metcalf*, 8 Mass. 230.   In those cases, as justly stated, it made no difference on the facts whether the transaction was called an escrow or not ; but the distinction is obvious, and may perhaps be of legal importance in some instances, as it may easily happen that, under some circumstances, it would be difficult to treat the incidents as identical.   In *Ruggles v. Lawson*, 13 Johns. 284, the same distinction was pointed out.   And in *Doe v. Bennett*, 8 Car. & P. 124, Coleridge, J., left it to the jury to find on the facts whether the deed was delivered as a deed in the first instance, or meant to be an escrow, and intimated a doubt whether, if not delivered as a deed in the first place, it would avail, where not to become operative until after death.   In *Tooley v. Dibble*, 2 Hill, 641, a quitclaim by the grantee, during the life of the grantor, was held to attach to the title after the subsequent delivery ; but the doctrine was laid down, with some qualifications that are not very clear, and the case is only noticeable as bearing on the doctrine of relation, which is more broadly stated than generally qualified by the cases. The Massachusetts cases reserve the consideration of the effect on such a delivery of a retention of control over the title and of revocation.   In *Fairbanks v. Metcalf*, before cited, the deed was left in escrow, upon conditions not performed, and the grantor resumed the deed, and subsequently delivered it himself to the grantee, and it was held there was no relation, and that the second delivery was the only one which could be regarded.

While a deed left in escrow is frequently held to relate back for the purpose of avoiding the difficulty of incapacity of the grantor, or his death occurring before the deed is handed over by the depositary, yet, except for that formal purpose, there is no universal relation.   Intermediate rights are valid against the second delivery.   The doctrine is clear that the second delivery is necessary to carry title, and that the performance of the condition must be absolute and accurate, and cannot be dispensed with on any otherwise

substantial performance. The case of *Watkins v. Nash*, L. R. 20 Eq. 262, is a very strong case on this point, because the fraud of the depositary induced a third party to believe the condition had been performed, but the grantors were held not estopped by his fraud. In *Beekman v. Frost*, 18 Johns. 544, by a singular blunder in the head-note, the doctrine of the court, which was to this effect, is misrepresented, and in the digests the same mistake has been perpetrated. The New York doctrine agrees with that elsewhere. In *Artcher v. Whalen*, 1 Wend. 179, a widow, on March 22, 1822, deposited a release of dower in escrow, with a note of the owner of the fee, to be delivered to her, and the release accepted if she gave up possession on or before May 1, 1822. She died April 30th, and was buried May 1st, but had made all her arrangements previously to give up possession. The owner had sold the land to a third person on that understanding, and he obtained possession on May 1st. It was held, nevertheless, that the widow's representatives were not entitled to the notes. In *Hinman v. Booth*, 21 Wend. 267, a deed was left in escrow, to be delivered if the grantee should give bond to the overseers of the poor to support one J. B. The grantee did support him till he died, but did not make or tender a bond in reasonable time, or at all. It was held that no title passed to the grantee, and that a conveyance by the grantor to other parties was valid. In *Jackson v. Catlin*, 2 Johns. 248, affirmed 8 Johns. 406, it was held, not only that a condition must be performed within a reasonable time, but in that case, at least, must be performed by the party specified. There a tract of 40,000 acres of land was bid off by one Jones, and three others at a sheriff's sale on execution against George Croghan, and the sheriff left the deed in escrow, to be delivered, on payment of the purchase money, in July, 1774. When the revolution shortly after broke out, Jones and his associates, although committing no overt act of treason, adhered to the enemy, and were attainted by legislative act in 1779. In 1788 an act of the legislature authorized the surveyor general to pay the purchase money, and sell the lands, and the controversy

arose between his grantees and Croghan's heirs. It was held that the state of New York took no right, and therefore could confer none to stand in the place of the execution purchasers, and that their failure to pay in time avoided the sheriff's deed, and left the title in Croghan or his heirs.

These cases, and many more which might be cited, hold that, until the delivery by the depositary in escrow, in conformity with the conditions of holding, no title whatever passes to the grantee; and as already suggested, the only cases where the nominal title relates back are where, by reason of death or incapacity, such relation is necessary to sustain the deed: *Bishop of Bath's Case*, 3 Coke, p. 326, 36*a*; *Bucknal's Case*, 5 Coke, 35. But no such relation is any more effectual than is necessary for that purpose, and it does not cut off intervening rights of third persons. The grantor's title may be levied on, and sold on execution, or otherwise dealt with so as to cut off the escrow: *Jackson v. Rowland*, 6 Wend. 666; see, also, *Demesmey v. Gravelin*, 56 Ill. 93, and cases before cited; *Murray v. Earl of Stair*, 2 Barn. & C. 82.

It is said that where there is a vested right, under contract, for a valuable consideration, the validity of *post-mortem* arrangements stands on a different footing from voluntary and revocable arrangements: *Stanton v. Miller*, 65 Barb. 58; *Exton v. Scott*, 6 Sim. 31; *Cook v. Brown*, 34 N. H. 460, and cases before cited; *James v. Vanderheyden*, 1 Paige, 385. And in *Thomas v. Sowards*, 25 Wis. 631, it was held that the deposit of a deed, upon conditions which were not set forth in terms, but referring to agreements not mentioned in the deed, did not operate, as a part performance to take the case out of the statute of frauds, and became nugatory.

If Mallory held the deed in question as Aden Taft's agent, to deliver it as his deed when the note should be executed, it could hardly be claimed that any such agency could exist. It remains to be seen whether there is any rule of law which will continue the authority of the depositary to act, when no claim or contract existed which the law could

recognize as valid, when Aden died. In law, this was purely a voluntary transaction, and when Mallory took the deed and unsigned note into his custody, defendant had no rights whatever resting in contract. The whole law as to the relation back of an escrow in case of subsequently occurring death or disability is traced back to Shepard's Touchstone, and one or two ancient authorities, which treat of it theoretically and without explanation. But so far as the authorities go, ancient or modern, they all assume that the relation back is founded on the unintended or unexpected occurrence of some disability without which the second delivery would have been the act, at its date, of the grantor, prevented without his original design. The reported cases, where such a retroactive effect has been given, are very rare. The case of *Graham v. Graham*, 1 Ves. Jr. 275, was the only one cited on the hearing where the grantee performed conditions after the death of the grantor. In that case there were a series of connected transactions which would have sustained the decree on other grounds besides those of escrow; but in that case, as in every one which seems to have been considered, the conditions to be performed by the grantee were contemplated as capable of performance, if not as calling for performance during the life of the grantor, so that, if performed as contemplated, the transfer of the deed by the depositary would have been the grantor's delivery as of that date. If any other doctrine exists, it is very singular that there is no trace of it in the English authorities, from which the law is derived, and on which it must be based, to take it out of the statutes of frauds and of wills. It would make the statute of wills of very small efficacy if parties can provide, by verbal arrangements, for the passage of their estates after death, without the action of trustees, heirs, or representatives, in consideration of acts to be performed by their grantees when they will not be alive to understand or approve them.

In such a case as this, the performance of the conditions by defendant being a condition precedent, he could have taken no interest in the estate until January, 1880, and up

to that time there was no trustee to hold a title, and it must have been in the heirs-at-law. Nothing could have been done during Aden Taft's life to entitle defendant to the land, and the failure to obtain a delivery during life was therefore not the result of casualty or unforeseen events, but was the very essence of the condition itself. The absence of any hint of the validity of such a deposit in escrow among the numerous cases to be found where escrows have been treated of, is very convincing proof that, in the absence of any contract relations requiring a conveyance, no such arrangement can be valid. It is as distinctly a testamentary provision as if it had been embodied in a will. But inasmuch as it rests chiefly in parol, it lacks the statutory requisites of a devise, which required no probate at common law, although it does in this State.

There is no reason of public policy which would justify the enlargement of the range of cases where a title can rest for any of its essentials upon parol evidence. Some of the earlier authorities evidently contemplate that all escrows should be evidenced by writing. Such, however, does not appear to be the modern rule. It is easy to see how difficult it must be to be sure of the facts when the immediate parties have become incapable of explaining them. But to allow the performance of unwritten conditions to be purposely postponed till after death would be to practically remove the restraints against parol and nuncupative wills, and to leave heirs and representatives unprotected against the divestiture of their estates by testimony which they have no means of contradicting.

Finding no support for such consequences in the authorities, and seeing none in legal principles, we think the conveyance must be held invalid.

The judgment must be reversed, and the case remanded for a new trial.

The other Justices concurred.