## McPHERSON v. BARBOUR.*

(183 Pac. 752.)

**Escrows—Vendors' Deposit of Deed in Bank—Compliance with Contract.**

1. Deposit, by the vendors of a tract, in a specified bank, of deeds conveying lots to buyers of such lots from the vendees of the tract, *held* a full compliance by the vendors with their agreement to place such deeds in escrow in the bank, an "escrow" being an instrument importing obligation deposited with a stranger or third party, to be held until the performance of a condition, and then delivered, though the time given to some of the lot purchasers to pay extended the time beyond the contractual four-year period of payment for the whole tract.

[As to delivery in escrow, see note in 53 **Am. St. Rep.** 555.]

From Lane: George F. Skipworth, Judge.

Department 2.

This is a suit in equity brought by P. M. McPherson and Mary Ann McPherson, to foreclose a land sale contract, entered into May 1, 1913, between them and A. C. Barbour, T. Rosalynd Barbour, M. M. Peery, and E. E. Kepner. Upon the death of P. M. McPherson, Seth M. McPherson and Walter McPherson, administrators of his estate, were substituted as plaintiffs instead of P. M. McPherson. Reference will be made hereafter to plaintiffs without noting such substitution. A decree was rendered in favor of plaintiffs, and against the above-named contractees, and the latter appeal.

The complaint is in the usual form in such suits, setting out the contract and alleging that the vendees had made default in the matter of payments called for by

*For authorities discussing the question of necessity of strict compliance with conditions of escrow agreement, see note in **L. R. A.** 1916A, 502.

On proof of escrow agreement by parol, see note in 18 **L. R. A.** (N. S.) 337.                                    Reporter.

the contract. The agreement entered into between the parties was in effect that the plaintiffs agreed to convey to the appellants certain real property described in the contract. The purchase price of the property is mentioned as $30,698, $10,198 of which was paid at the time of the execution of the contract and the balance, $20,500, was to be paid on or before four years after date of the contract with interest at 6 per cent per annum, payable January 1, 1914, and annually thereafter. Five hundred dollars or more could be paid on the principal at any time, and the same was to be applied when full payment was made on the purchase price of the tract. Certain reservations were made in regard to the growing crops on the land, the details of which are not material here. The contract contained the following stipulation:

"It is further agreed that second parties may have said lands or any part thereof, surveyed and platted into blocks and lots as they shall elect, and first parties hereby agree and contract to execute, acknowledge and deliver without charge, but at the expense for platting, surveying, notaries' fees, and filing of second parties, any and all deeds of dedication thereof required or requested by second parties.

"It is further agreed that second parties may sell any part of said premises and lots or blocks therein, subject to the above reservations, at a price of not less than 150% *pro rata* of the above mentioned purchase price, and upon payment to first parties of 90% of such sale price, in addition to the payments herein acknowledged, first parties shall at the expense of second parties make and execute deeds for such lots or tracts so sold; also that for lots or tracts sold by second parties upon time, first parties shall at the request of second parties make and execute good and sufficient deeds therefor, which deeds shall be placed in escrow in the First National Bank of Springfield, Oregon, to

be delivered to the purchaser upon full payment therefor. Ninety per cent of the purchase price for lots or tracts sold, including those sold for cash and those sold wholly or partially on time, shall be paid into said First National Bank, and by it held in a separate account to the sum of Five Hundred Dollars, and whenever such proceeds shall amount to the sum of Five Hundred Dollars or more, the same shall be, by said bank, paid over to said first parties and credit shall be given on this contract therefor.''

The purchasers agreed to pay the taxes assessed against the premises on the 1913 and all subsequent tax-rolls. The vendors in case all of said payments with interest and taxes should be fully paid as specified in the contract agreed to execute and deliver to the vendees, their heirs or assigns, a good and sufficient deed in fee simple of the premises, or such portion thereof as shall not have been theretofore deeded. The contract further provided as follows:

''And it is agreed that if the said parties of the second part shall fail to make any of said payments at the time and in the manner above specified, or within sixty days after any payment of principal or interest shall become due, or shall fail to pay any tax or assessment before the same shall become delinquent; this agreement shall be henceforth void, all payments thereon forfeited, and possession of said premises shall be at once surrendered to the first parties, or said first parties may elect to declare the whole of said purchase price due and proceed at once, by foreclosure or otherwise, to gain possession of said premises.''

The contract of sale was executed in triplicate; one of which was retained by the plaintiffs; one by the appellants, and one was left with the officers of the First National Bank of Springfield. After making the contract the purchasers proceeded to plat and sub-

divide said tract into lots and blocks making a total of
365 lots and duly recorded the plat, the McPhersons
assisting therein, making the necessary dedication of
the streets and alleys provided for in the plat.

The appellants by their answer, after admitting the
making of the contract, alleged that the vendors
breached the contract by refusing to comply with the
terms and conditions of the same, and—

"Absolutely refused to enter into any escrow agree-
ments with purchasers procured by these defendants,
or to make, execute, acknowledge and deliver in escrow
in the First National Bank of Springfield, or else-
where, deeds of conveyance from them to the said pur-
chasers, as provided in said contract, or otherwise, and
absolutely refused and neglected to part with dominion
and control over such deeds and deposit the same in
the First National Bank of Springfield, Oregon, in
escrow, as provided in said contract, or in any other
manner so as to protect the purchaser, so that such
purchaser could procure deeds by payment of the pur-
chase price in installments and on time, as the plain-
tiffs had agreed and covenanted to do under the terms
of their contract."

That by reason thereof, it was impossible for the
vendees to sell lots or tracts of land to prospective
purchasers.                                    Affirmed.

For appellants there was a brief with oral argu-
ments by *Mr. O. H. Foster* and *Mr. Chas. A. Hardy.*

For respondents there was a brief over the names of
*Mr. Lark Bilyeu, Mr. A. C. Woodcock* and *Mr. Frank
Depue,* with oral arguments by *Mr. Bilyeu* and *Mr.
Woodcock.*

BEAN, J.—1. It appears from the record that after
the land was platted, the original vendees negotiated

sales of some of the lots to different parties. In regard to the lots that were sold on the installment plan, or on time, the appellants usually collected 10 per cent of the amount of the purchase price for such lots, and would prepare a deed for the same from P. M. McPherson ànd wife to the purchaser of the respective lot, stating the consideration to be paid and left the same at the First National Bank of Springfield, Oregon, for plaintiff and wife to execute; that upon notice thereof, either by one of the appellants or an officer of the bank, McPherson and wife duly executed and acknowledged such deed, and deposited the same in the First National Bank of Springfield as a fulfillment of the contract. The officer of the bank noted on the back of the original contract left with it as follows:

"No payments in amount less than $500 to be indorsed hereon. Place credits in smaller amounts in McPherson escrow acct."

The bank proceeded to keep an account of the payments made for lots sold by the appellants and deposited in the bank until such time as the same should amount to $500. After the sale of a few lots had been made by appellants, they prepared and had printed blanks for a so-called escrow agreement to the effect that the deed to the particular lot sold shall be held in escrow at the First National Bank of Springfield until the price of the lot with interest has been paid, and directing the bank to deliver the deed to the grantee when such payment is made; that upon failure to make payment the deed to be recalled and the amounts paid forfeited. After that when they sold a lot they obtained the signature of the purchaser of the same to the escrow agreement, properly filled out and inserted the name of P. M. McPherson therein, and left the same at the bank, and requested Mr. McPherson to

sign the agreement. This he failed to do as he states that he had already signed a contract for the sale of the land and the same was unnecessary; that it would complicate the matter. It is not contended by the appellants that the McPhersons failed to execute the deeds as requested, but that they failed to execute the escrow agreement which the vendees desired. This they contend was a breach of the contract. It appears from the testimony that after some consultation between the parties in regard to the matter, Mr. McPherson indicated that he would sign the escrow agreement if the appellants would indorse on the contract the following, a form of which was furnished them by McPherson:

"For a valuable consideration, it is hereby mutually agreed by and between the parties to this contract, that the time for the completion and payment of the within contract, except as to the payment of the interest, be and the same is hereby extended two years and three months from the date of this contract, to correspond with the time of sale."

The proposed stipulation was never indorsed on the land sale contract involved herein, but one of similar purport bearing the date of sale made was indorsed on the so-called escrow agreements and signed on behalf of appellants, leaving a blank for Mr. McPherson to sign when they were left in the bank. McPherson never signed any of the indorsements or any of the so-called escrow agreements. The bank received the different deeds executed by P. M. McPherson and his wife to the different purchasers together with the incomplete escrow agreement and placed the same in an envelope. A sample of the indorsements made on the envelopes at the bank is as follows:

"Central Land Co.—A. L. Johnson.
Escrow No. 747.   Consideration $——.
From Central Land Co.,
                    Party of the First Part,
To A. L. Johnson,
                    Party of the Second Part.
Credit payts. to acct. McPherson Escrow #521."

It seems the appellants made sales of lots in the name of Central Land Company. The sole question raised in this case is: Did McPherson fail to comply with the contract of sale, or was the execution of the different deeds of lots to purchasers and the placing the same in the bank to be delivered by it to the respective purchasers upon full payment of the purchase price, a full compliance with his contract?

It should be borne in mind that it was stipulated between the parties to the contract that when the second parties, the appellants, should sell a lot or tract on time according to the stipulations of the contract the first parties "shall at the request of second parties make and execute good and sufficient deeds therefor." This it is conceded was done. It was further stipulated thus:

"Which deeds shall be placed in escrow in the First National Bank of Springfield, Oregon, to be delivered to the purchaser upon full payment therefor."

The definition of an "escrow" is given as follows:

"An escrow is a written instrument which by its terms imports a legal obligation, and which is deposited by the grantor, promisor, or obligor, or his agent, with a stranger or third party, to be kept by the depositary until the performance of a condition or the happening of a certain event, and then to be delivered over to the grantee, promisee, or obligee": 10 R. C. L., § 2, p. 621.

See, also, 11 Am. & Eng. Ency. of Law (2 ed.), p. 333 et seq.; *Davis* v. *Brigham,* 56 Or. 41 (107 Pac. 961, Ann. Cas. 1912B, 1346); *Tyler* v. *Kate,* 29 Or. 515 (45 Pac. 800). Delivery as an escrow is defined as a delivery on some collateral condition which must be consistent with the contract, on the happening of which condition alone the contract is to take effect. No precise form of words is necessary to constitute an escrow. The term ''escrow'' need not be used, nor will the mis-- use of that term in designating an instrument neces- sarily make it an escrow. There can be no escrow un- less the delivery of the instrument by the depositary to the grantee or obligee is conditioned upon the per- formance of some act, or the happening of some event. The condition upon which an instrument is delivered in escrow need not, however, be expressed in writing, but may rest in parol, or be partly in writing and in part oral: 10 R. C. L., § 5, p. 623. Citing *Couch* v. *Meeker,* 2 Conn. 302 (7 Am. Dec. 274); *Taft* v. *Taft,* 59 Mich. 185 (26 N. W. 426, 60 Am. Rep. 291); *Man- ning* v. *Foster,* 49 Wash. 541 (96 Pac. 233, 126 Am. St. Rep. 876, 16 Ann. Cas. 95, 18 L. R. A. (N. S.) 331, and note); *Bowker* v. *Burdekin,* 11 Mees. & W. 128 (12 L. J. Exch. 329, 8 E. R. C. 598); notes, 130 Am. St. Rep. 913, 950, 10 L. R. A. 470); *Fulton* v. *Priddy,* 123 Mich. 298 (82 N. W. 65, 81 Am. St. Rep. 201); *Campbell* v. *Thomas,* 42 Wis. 437 (24 Am. Rep. 427; note, 1 Am. St. Rep. 114).

To constitute an escrow it is essential, not only that the grantor and grantee are at one as to the conditions under which the deposit is to be made, but that such conditions should be communicated to the depositary. And it is equally essential that the grantee or obligee is aware of every circumstance in connection with the conditions likely in any way to affect the liability

under it: Note, 130 Am. St. Rep. 933. Where the pos-
session of the depositary is subject to the control of
the depositor, an instrument cannot be said to be de-
livered, and it is not an escrow. While the depositor's
right of possession may return if the specified event
does not happen, or the conditions imposed are not
performed, yet to constitute an instrument an escrow
it is essential that the deposit of it should be in the
meantime irrevocable; that is, that when the instru-
ment is placed in the hands of the depositary, it should
be intended to pass beyond the control of the depositor,
and that he should actually part with all present or
temporary right of possession and control over it. In
case the deposit is made in furtherance of a contract
between the parties, the contract must be so nearly
complete that it remains only for the grantee or obligee
or another person to perform the required condition,
or for the event to happen, to have the instrument take
effect according to its import: 10 R. C. L., § 8, p. 626.

It appears from the contract above quoted that the
conditions upon which the deeds to lots that might be
sold by the appellants should be deposited in the First
National Bank of Springfield were all contained in
that contract for the direction of the parties, except
the price to be paid for each of the various lots. Such
price in every case disclosed by the record was men-
tioned in the deed which was deposited in the bank.
It appears that the depositary was fully informed as
to the conditions, one of the triplicate contracts being
left with the bank for its guidance in the matter.

We therefore conclude that the deposit of the sev-
eral deeds which the McPhersons were requested to
execute and which they executed and deposited in the
bank under the circumstances detailed in this case was
a full compliance on their part, to place such deeds in

escrow in the bank; that they did not fail to comply with the contract in this respect; that all the conditions upon which the deeds were delivered in escrow by McPherson did not necessarily have to be expressed in writing. He was not required to use the word "escrow" when he deposited the deeds in the bank. The deeds were complete in every respect, and were deposited with the bank pursuant to the sale contract. The vendors thereby relinquished all dominion over them. The condition of delivery to the grantee named therein was specified and understood by the depositary. In so far as shown by the record, such arrangement was understood by, and satisfactory to, the different lot purchasers. The contract provided that the vendees, A. C. Barbour et al., should sell the lots after the tract was platted, and not the McPhersons. That instrument authorized the vendees to make such sales. It was not absolutely necessary for McPherson and wife to sign additional agreements.

Something is said in the argument in regard to the time given to some of the lot purchasers to pay for the lots, thereby extending the time beyond the period of four years for the full payment for the tract according to the terms of the contract of sale involved herein. But it appears that Mr. McPherson was willing that the time for payment for such contract should be extended. This is shown by the indorsement which he proposed to have indorsed on the contract, so there is no real controversy between the parties in regard to the time allowed the different lot purchasers. The plaintiffs by the execution of the deeds with knowledge of the time of payment sanctioned such agreement, and this matter need not be further considered. It is admitted that the appellants were in default in their payments; they had sold and apparently could sell

only comparatively a few lots. While there may have been some misunderstanding as to the rights and duties of the parties to the contract of sale, the claim of the appellants savors of an attempt to place the vendors in default in order to obtain a return of the partial payments they had made for the real property. Five persons who purchased lots of appellants upon the installment plan and had each only partially paid for the lots so purchased were made defendants in this suit. The decree of the trial court allowed such defendants to complete the payments for their respective lots and receive their deeds therefor. No appeal was taken from that part of the decree. Provision was also made for the appellants to complete payment for the real property within one year from the date of the decree.

After a careful examination and consideration of the record, and the question submitted, we affirm the decree of the lower court.                AFFIRMED.

McBRIDE, C. J., and JOHNS and BENNETT, JJ., concur.