Emil KUNICK; Bernard Neil Kunick; Eugenia Eileen Rojic and Albert Rojic, Darlene Chell Myers and Warren Myers, Plaintiffs and Respondents,

v.

Kye TROUT, Jr., Defendant and Appellant.

No. 7668.

Supreme Court of North Dakota.

Sept. 23, 1957.

Rehearing Denied Oct. 28, 1957.

Strutz, Jansonius & Fleck, Bismarck, and Halstead & Lovell, Beach, for defendant and appellant.

Mackoff, Kellogg, Muggli & Kirby, Dickinson, for plaintiffs and respondents.

JOHNSON, Judge.

This is an action brought by the plaintiffs to recover $12,500 for the alleged sale to the defendant of an undivided one-fourth interest in the oil, gas and other minerals in and under the following described real property:

"Lots Three (3) and Four (4), N½ SW¼ & SW¼SW¼ and the South Half of the Northwest Quarter (S½ NW¼) of Section 2; the Southeast Quarter (SE¼) and the Northwest Quarter (NW¼) of Section 11; the Southwest Quarter (SW¼) of Section 14; Lots One (1), Two (2), Three (3) and Four (4) and the South Half of the North Half (S½N½) of Section 3; the South Half of Section 12; the North Half (N½) of Section 14; all in township 141, North Range 104 West, Golden Valley County, North Dakota; and all of Section 35, Township 142, North Range 104 West, Golden Valley County, North Dakota."

The plaintiffs allege that the obligation of the defendant is represented by a draft dated July 14, 1954, for $12,500 payable 200 days after date. It recites:

"Settlement in full as shown hereon. Acceptance constitutes receipt in full. Draft No. 125, Beach, North Dakota, July 14, 1954."

The draft describes the real property mentioned above with the exception that it refers to an undivided mineral interest therein, and the deeds cover an *undivided one-fourth interest*.

The plaintiff, Emil Kunick, is the father of Bernard Neil Kunick, a single man,. Eugenia Eileen Rojic, and Darlene Chell Myers. There are three mineral deeds, each covering land owned by the children of Emil Kunick.

It is alleged that pursuant to agreement between the parties, mineral deeds approved by both the plaintiffs and the defendant were executed and left in the possession of the Farmers and Merchants. Bank of Beach, North Dakota, the deeds to be delivered upon payment of the draft. Emil Kunick, together with, perhaps, two of his children, negotiated for the sale of the minerals to the defendant. Although Emil Kunick had no record interest in the land, for some reason, the defendant inserted his name in the draft. Thus in an action involving the collection of the draft, his name appearing therein, he became a necessary party to this action.

Plaintiffs set out that when the sale was made of the minerals to the defendant, the title was merchantable. It is stipulated that the plaintiffs "were and are owners in fee simple" of at least an undivided one-fourth interest in and to all of the oil, gas and other minerals under the land heretofore described. They allege the failure and refusal of the defendant to pay the draft after it became due, and ask for judgment of $12,500 together with interest at 4% from February 4, 1955.

The defendant answered and demurred to the complaint. At the time of the trial the defendant withdrew his demurrer. The defendant's answer denies the plaintiffs' complaint and asserts that he purchased another undivided one-fourth interest in and to all the oil, gas, casing head gas, casing head gasoline and other minerals in and under certain property owned by the plaintiffs; that such mineral interest has long since been paid for and specifically denies that he purchased any other mineral interest from the plaintiffs. Then the defendant pleads by way of affirmative defense that the purchase of the mineral interest of the plaintiffs was an interest in real property; that no note or memorandum thereof was made in writing, and that the plaintiffs accepted, received and retained for their use all the benefits accruing to them under an oil and gas lease now held by the Stanolind Oil and Gas Company covering the real property described in the complaint. By this acceptance of delay rentals he asserts that the plaintiffs "have waived any rights, benefits, claims or privileges they now seek to assert."

This case was tried to the court without a jury. The trial court held for the plaintiffs. The defendant appeals and demands a trial de novo.

The stipulated facts show that on July 19, 1954, Eugenia Eileen Rojic was the owner of an undivided one-fourth interest in and to the minerals in and under the NW¼ of Section 11, the SE¼ of said section; and the SW¼ of Section 14; Lots 3 and 4, and the S½NW¼ and the N½SW¼, SW¼SW¼, all in Section 2–141–104, Golden Valley County, North Dakota. On the day mentioned, she and her husband, Albert Rojic, made and executed a mineral deed to the defendant. On the same day, Darlene Chell Myers and her husband, Warren Myers, executed a mineral deed to the defendant covering an undivided one-fourth interest in and to all of Section 35–142–104; and lots 1, 2, 3, and 4, and the S½N½ of Section 3–141–104. Also on the same day, Bernard Neil Kunick, as the owner of the S½ of Section 12 and the N½ of Section 14, Township 141, North of Range 104, executed a mineral deed to an undivided one-fourth interest in and to all the minerals in and under the same, to the defendant. The mineral rights of the owners were subject to an oil and gas lease dated May 22, 1951, held by assignment by the Stanolind Oil and Gas Company. Delay rentals were paid by the company to the Farmers and Merchants Bank of Beach, North Dakota. Checks were received in payment of delay rentals and mailed by the bank on April 18, 1955, to the three owners of the minerals under the land above described. The delay rentals covered the three-fourths interest in the minerals owned by the plaintiffs. The owners cashed these checks and received payment in full for them.

The draft for $12,500 and the mineral deeds were prepared by the defendant who procured their execution by the children of Emil Kunick. The deeds are dated July 14, 1954, and acknowledged on July 19, 1954.

After the preparation of the instruments, Emil Kunick, the father of the grantors, and the defendant, went to the Farmers and Merchants Bank of Beach, North Dakota, and the instruments were left at the bank.

It is argued that since the deeds do not refer to the draft, but specify only a consideration of "Ten and more Dollars cash in hand paid", that it is impossible to assert that the draft covers the purchase price of

the minerals described in the three deeds. The draft was attached to the envelope containing the deeds. The face of the draft discloses clearly that it was intended as payment for the mineral interests covered by the mineral deeds. It covers the same description, is payable to the grantors and their father. As already pointed out, its only defect as to description of the land involved is that it fails to refer to an undivided "one-fourth interest" of the minerals under the land. The defendant does not deny that the draft was intended to evidence payment for the three mineral deeds.

On cross-examination of the defendant he was asked to identify the exhibit constituting the $12,500 draft. He did identify his signature and admitted that it was drawn on a standard form. He was also asked when he had decided to dishonor the draft. While he could not give the exact date he stated it was prior to the first of the year; that is prior to January 1, 1955. The draft for the prior mineral interest purchased from the plaintiffs had been paid.

■ The facts clearly establish that the draft was intended to constitute payment for the three mineral deeds given by the plaintiffs.

No instructions were given to Mr. Schillo, the cashier of the Farmers and Merchants Bank, Beach, North Dakota, with reference to the delivery of the deeds. He testified that he held the draft at the bank from July 19, 1954, to the date of the trial. He brought the instruments into court. When they were brought into court the deeds were in an envelope marked "Exhibit 5". This exhibit is dated July 19, 1954, and states:

"Mineral Deeds: Bernard Neil Kunick et al. to Kye Trout, Jr. Collecting Bank: Farmers & Merchants Bank, Beach, North Dakota. Paying Bank: First National Bank, Bismarck, North Dakota."

The draft, marked Exhibit 4, was clipped to the envelope.

The plaintiffs plead that the deeds were:

" * * * left in the possession of the Farmers and Merchants Bank of Beach, North Dakota, to be delivered to the Defendant upon payment of the said draft, which the Defendant agreed to pay according to the terms thereof."

When the draft was left at the bank by Emil Kunick, he and his son and daughters and their husbands, endorsed it in blank. The defendant failed to pay the draft when it became due.

The defendant argues several legal propositions: that there was no sufficient memorandum setting forth the terms and conditions of the contract to comply with the Statute of Frauds; that Emil Kunick, the father of the owners of the minerals who conveyed to the defendant, did not have authority in writing to act for them; that the plaintiffs are estopped to claim a completed sale of real property, since they accepted delay rentals after the date of the alleged sale. He also contends that there was no meeting of the minds of all of the parties to the transaction; and that the deposit of the draft and the deeds is not an enforceable escrow agreement; that the delivery does not constitute an executed and enforceable contract; that Emil Kunick had no title to convey and was not a proper party to this action; that there was a lack of consideration such as would void the alleged contract.

If the deposit of the draft and the deeds was a true escrow and no estoppel is involved, we need not consider the other questions raised by the appellant. These two issues will determine this case. The others are without merit.

■ Under our statutes a grant may be deposited by the grantor with a third person to be delivered on performance of a condition, and on delivery by the depositary it will take effect. While in the possession

of the third person and subject to condition, it is called an escrow. Section 47–0908, NDRC 1943.

Under our statutes there are two requisites for an escrow in its true sense:

1. Deposit by grantor with a third person;

2. Delivery upon performance of a condition.

If these two requisites exist, upon delivery by the depositary the grant will take effect.

What was the purpose of the deposit of the mineral deeds and the draft with the Farmers and Merchants Bank of Beach, North Dakota? As we view the record the deposit was made for the benefit of all parties concerned. It was made to give the defendant time to check the title, and upon payment of the draft to insure delivery of the deeds. The plaintiffs designated the Farmers and Merchants Bank of Beach as the collecting bank and entrusted the draft to that bank for the purpose of collecting it when it became due. They all endorsed it to enable collection through the First National Bank of Bismarck, North Dakota, when due.

■ Whether a grant is in escrow and subject to conditions depends upon the intention of the parties as manifested by their expressed words and purposes. No particular form of words is necessary and the agreement need not be in writing. That is the general holding. 30 C.J.S. Escrows § 4c, page 1196; McDaniel v. McDaniel, 131 Neb. 639, 269 N.W. 380, 382; Conner v. Helvik, 105 Mont. 437, 73 P.2d 541, 545; Anderson v. Morse, 110 Or. 39, 222 P. 1083, 1088.

On March 11, 1955, Mr. W. L. Eckes, acting as attorney for the plaintiffs wrote to the defendant with reference to the completion of the deal. He said:

"Emil Kunick of Sentinel Butte has asked me to write to you concerning the completion of the deal in which you were going to purchase another ¼ mineral interest in the family's farm. He tells me you purchased a ¼ mineral interest last summer and he put deeds on deposit or rather in escrow together with a draft of yours on the 1st National Bank of Bismarck, and that this was to have been paid some number of days ago.

"Would you inform me as to whether you intend to honor this draft."

Mr. Eckes also wrote to the defendant on April 1, 1955, referring to his letter of March 11th and stating in part:

"As you know you made an agreement to purchase the other ¼ mineral interest, and you deposited a draft to cover same. Do you intend to honor this draft, or will Mr. Kunick have to take other steps to enforce this deal, this agreement to purchase."

■ The defendant is a petroleum engineer and geologist. He has specialized in geology. He had previously purchased an undivided one-fourth of the minerals from the plaintiffs in this action. From the letters written to the defendant, the conduct of the plaintiffs, the tacit consent of the defendant to the deposit, it is clear that both the plaintiffs and the defendant understood that the deposit was an escrow.

■ This court held in Ganser v. Zimmerman, N.D., 80 N.W.2d 828, that a valid escrow may be made by oral agreement and its existence may in part at least be shown by circumstances and conduct indicating the intention of the parties.

■ There can be no escrow unless the delivery of the grant by the depositary to the grantee is conditioned upon the performance of some act or the happening of some event. 30 C.J.S. Escrows, § 4, a, p. 1194. In the case at bar the performance of the condition was the ascertainment of marketable title and the payment of the draft by the defendant. The draft was

payable 200 days from date. It became due on or about the 1st of February 1955. The defendant did not check the title to the land involved, but he does not claim any defect in the title. He did not dishonor the draft for reasons of defect in title. He decided to dishonor the draft for reasons not disclosed by the evidence.

■ According to many authorities it is the annexation of a condition to a delivery by the third person to the grantee which characterizes the instrument deposited as an escrow rather than as a deed presently, and where the future delivery is to depend upon the payment of money or the performance of some other condition, it will be deemed an escrow. 10 RCL, Escrow, Section 6, page 625.

"It is essential that when the instrument is deposited it should be intended to pass beyond the control of the depositor and that he should actually lose control of it; for in case the deposit is made in furtherance of a contract between the parties, the contract must be so complete that it remains only for the grantee or obligee or other person to perform the required condition, or for the event to happen, to have the instrument take effect according to its import." 30 C.J.S. Escrows § 5b, page 1198; McPherson v. Barbour, 93 Or. 509, 183 P. 752; Jozefowicz v. Leickem, 174 Wis. 475, 182 N.W. 729.

■ The evidence here discloses a completed contract. The grantors had fulfilled every requirement of their agreement. Nothing remained to be done by them. It remained only for the grantee to satisfy himself as to title and to pay the draft. The contract was complete.

The grantors had parted with complete control of the mineral deeds. To make the draft effective without any further act on the part of the plaintiffs and to enable the bank to collect it when due, they had endorsed it in blank. They never attempted to exercise any control over the deeds. They did attempt to get the defendant to pay the draft without suit.

When we consider all the evidence, the delivery of the mineral deeds and the draft to the escrow agent, the Farmers and Merchants Bank of Beach, North Dakota, the actions of the plaintiffs, and their attempt to collect the draft, it is apparent that they considered that the mineral deeds deposited with the bank were subject to the control of the grantee upon fulfillment of the conditions of the deposit, the payment of the draft.

When it became apparent to the plaintiffs that the defendant refused to perform, they did not recall or attempt to recall the deeds. They brought action on the draft. The defendant, through his attorney, attempted to withdraw the draft from the bank.

■ The irrevocability of the deposit may be gathered from the circumstances. The bank was acting for both parties. In Thornhill v. Olson, 31 N.D. 81, 153 N.W. 442, L.R.S.1916A, 493, this court held that the depositary is the agent of both parties, but neither for one more than the other, and is empowered to heed neither; and is merely a conduit used in passing title for convenience and safety. It is evident that the bank understood its duty. The draft and deeds were in its possession at the trial of this action. Under the facts in this case, the bank, upon receipt of the draft and the mineral deeds, was merely a conduit for the passing of title. The bank needed no instruction with reference to its duty. That its officers were fully acquainted with commercial transactions of this type is evidenced by the record. The fact that the bank did not deliver the draft upon request for its withdrawal is an indication that it felt that it had complete control of the instruments. The Farmers and Merchants Bank of Beach, North Dakota, did send the draft to the First National Bank, Bismarck, North Dakota, for collection. It was not collected, and was returned to the

Farmers and Merchants Bank to abide further action. That bank kept the draft and the deeds.

■ When an instrument has been deposited in escrow, to be delivered to a designated person upon the performance of a certain condition or the happening of a certain event, it is well established that the performance of the stipulated condition or the happening of the event is essential in order to entitle the beneficiary to a delivery of the instrument by a depositary. 19 Am.Jur. Escrow, Section 20, page 437.

■ When delivery has been made in escrow the Statute of Frauds has no application.

"The weight of authority supports the proposition that if a deed containing substantially the provisions of an oral contract of sale of land is delivered in escrow in the true sense of that term, so that it has passed into the possession of a stranger for delivery to the grantee upon the happening of some event or the performance of some condition, and is beyond the control of the grantor, the contract is taken out of the Statute of Frauds, at least as against the party or parties who executed the instrument." 19 Am.Jur., Escrow, Section 12, p. 428. For citation of cases see Note No. 4, See 25 RCL, Statute of Frauds, Section 118, page 532; 100 A.L.R., Deeds Delivered to Third Person; Escrow, pages 210, 211.

Particularly would this rule seem to be applicable where, as in this case, the purchaser or vendee, the party to be charged, has also signed a memorandum, which, when taken together with the contents of the mineral deeds with which it was properly connected, makes both the memorandum and the deeds a complete note or memorandum of the contract of purchase and sale between the parties.

■ From the facts and circumstances and the intention of the parties, to be gathered from the record in this case, the deposit of the draft and the mineral deeds with the Farmers and Merchants Bank of Beach, North Dakota, constituted an escrow in its true sense.

■ Either party may enforce the performance of the escrow agreement where he has fully performed his part. 30 C.J.S. Escrows § 15, page 1219. The plaintiffs have performed in full. The plaintiffs considered the deeds irrevocably delivered to the escrowee. They did not attempt to rescind the transaction. They repeatedly attempted, through their attorney, to get the defendant to pay the draft. The correspondence shows such intent. It referred to the deposit as an escrow. That, however, is not conclusive, but it is a circumstance to be considered in connection with the evident intent of the parties.

The defendant contends that the plaintiffs are estopped to assert any rights under the contract; that they have waived their rights.

■ The stipulated facts show that the parties to the contract knew that the land involved in the mineral deeds was subject to an oil and gas lease in force since May 22, 1951, and held by the Stanolind Oil and Gas Company. As long as the plaintiffs were the owners of record of the minerals covered by the deeds they were entitled to the delay rentals in proportion to the mineral ownership that they still retained. The defendant admitted that he dishonored the draft. The defendant made up his mind not to honor the draft sometime prior to the 1st of January 1955. The sale was made:

"* * * subject to any rights now existing to any lessee or assigns under any valid and subsisting oil and gas lease of record."

The delay rentals were paid to the owners of the land long after the defendant had

decided to dishonor the draft. Eugenia Eileen Rojic cashed her check July 25, 1955. Darlene Chell Myers cashed her check April 26, 1955, and Bernard Neil Kunick cashed his check August 8, 1955. Under these circumstances the defendant is not in a position to raise the defense of estoppel.

■ The proper function of an equitable estoppel is to prevent fraud, actual or constructive and the doctrine should always be so applied as to promote the ends of justice and accomplish that which ought to be done between man and man. 19 Am.Jur., Section 39, Estoppel, p. 638. It is founded upon the principles of morality and fair dealing and is intended to subserve the ends of justice. It is the extension of the application of the golden rule to the everyday affairs of men. It requires that one should do unto others as in equity and good conscience he would have them do unto him if the position of parties was reversed.

■ This court has held that to constitute an equitable estoppel there must exist a false representation or concealment of facts made with knowledge, actual or constructive, and the party to whom it was made must have been without knowledge or means of knowledge of the real facts. Loff v. Gibbert, 39 N.D. 181, 166 N.W. 810. Where the facts are known to both parties, as they were here, or where they have the means of ascertaining the truth, there is no estoppel. Loff v. Gibbert, supra. See also Narveson v. Schmid, 77 N.D. 814, 46 N.W.2d 288; First Church of Christ, Scientist v. Revell, 68 S.D. 377, 2 N.W.2d 674.

The defendant knew of the lease. He knew delay rentals were payable under it. No false representations had been made to him. He had full knowledge of the actual facts. It is common knowledge that delay rentals under an oil and gas lease follow the title interest of the owner or owners of the minerals. There was no estoppel involved by the acceptance of the delay rentals by the plaintiffs.

■ Nor did the plaintiffs waive any rights under their contract by the acceptance of delay rentals. If any waiver is involved, the defendant waived his right to delay rentals by his refusal to perform. He had refused to perform long before the delay rentals were paid. He cannot now use the acceptance of such delay rentals as a basis for his own nonperformance of the contract of purchase. Waiver has no application to the rights of the plaintiffs.

■ While this is an action based upon a contract, it was tried to the court without a jury. At the commencement of the trial the plaintiffs offered that any delay rentals received by the plaintiffs on the proportionate mineral interest involved be offset against any judgment to which they might be entitled. No counterclaim for such delay rentals was pleaded. Nor does the record show the amount of the delay rentals which the plaintiffs received after the execution of the mineral deeds. However, in justice to the defendant, this action is remanded to the district court for determination of the amount of the delay rentals received by the plaintiffs after July 19, 1954, said amount to be credited upon the judgment.

As so modified, the judgment is affirmed.

GRIMSON, C. J., and BURKE, MORRIS and SATHRE, JJ., concur.